HENRY HENTZ et al., Respondents, *v.* HENRY A. MILLER, Appellant.

The real owner of personal property is only estopped from asserting his title to it when and so far as he has allowed another to have the appearance of ownership.

H. M. Cutter & Co., cotton brokers, falsely and fraudulently represented to plaintiffs that they had orders from the F. M. Co. to purchase for it one

hundred bales of cotton, and relying thereon, plaintiffs contracted to sell that quantity to the corporation named. Bought and sold notes in the usual form were delivered by plaintiff's brokers, in which the sale was stated to have been made to said corporation. The notes contained the following : " Payment guaranteed by H. M. Cutter & Co. Bill to H. M. Cutter & Co." No bill, warehouse receipt or other muniment of title was in fact delivered to Cutter & Co. The cotton was delivered to that firm to be delivered to the supposed purchaser; they placed it in a warehouse, obtained advances upon the warehouse. receipts, and it was subsequently sold to *bona fide* purchasers. In an action to recover possession of a portion of the cotton, *held*, that the transaction, by means of which Cutter & Co. obtained possession, was a larceny ; that the words "Bill to H. M. Cutter & Co." amounted merely to a *memorandum*, and taken with the rest of the contract imported that when the bill was made out to the purchaser named, it was to be sent to Cutter & Co.; and that as plaintiffs had delivered to that firm no symbol of property, or indicium of title giving an appearance of ownership, they were not estopped from asserting their title and were entitled to recover.

(Argued October 13, 1883 ; decided November 20, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made January 19, 1881, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This was an action of replevin to recover certain bales of cotton.

· The facts were stipulated and are substantially as follows:

Plaintiffs, being the owners of some two hundred bales of cotton, sent samples thereof to Weld & Co., their brokers, to obtain purchasers. On January 4 and 5, 1878, Henry M. Cutter, of the firm of H. M. Cutter & Co., cotton brokers in said city, falsely represented to Weld & Co. that his firm had orders from the Freeman Manufacturing Company, of North Adams, Mass., and the Renfrew Manufacturing Company, of South Adams, Mass., to buy cotton for them, one hundred bales each, and proposed to buy plaintiffs' cotton to fill said orders. This offer was communicated to plaintiffs, who accepted it.

Bought and sold notes containing the names of plaintiffs as sellers, and of said manufacturing companies respectively as

buyers were made out and delivered by Weld & Co., in the usual manner, the terms being " cash in ten days." In these notes appeared the words " payment guaranteed by H. M. Cutter & Co.," " bill to H. M. Cutter & Co." In pursuance of said supposed sales plaintiffs delivered the cotton, including the bales in suit, to Weld & Co., by whom it was delivered to H. M. Cutter & Co., " for the purpose of being .by them shipped to the supposed purchasers, respectively." No muniment or indicium of title of any kind was delivered to Cutter & Co., or any document whatever except said bought notes, and the said delivery of the cotton by sellers' brokers to buyers' brokers was made in " the usual course of business in such cases." Cutter & Co., instead of shipping the cotton, stored it in a warehouse in the city of New York, and took negotiable warehouse receipts for it, at first in their said firm name, but afterward, at Cutter's request, and " in order to facilitate Cutter & Co. in raising money on said cotton," the warehouseman, issued new warehouse receipts in the name of G. H. Price & Co., who thereupon, at Cutter's request, by hypothecating the said receipts, raised money on them and paid it over to Cutter & Co., and then sold the cotton to Ralli Brothers, who, upon delivery to them of the warehouse receipts indorsed by Price & Co., and by the intermediate holders who had advanced the money thereon, and after they had received the cotton itself, paid for it at market rates, and had the same removed and stored in defendant's warehouse. On January 10, 1878, Cutter & Co. absconded, and it was then first discovered by plaintiffs and defendant that said firm had no orders from either of said manufacturing companies to buy any cotton, and that Cutter's statements in that behalf were utterly false. Neither of said manufacturing companies ever assumed, adopted or ratified said pretended purchases, or received any of said cotton, or any of the proceeds thereof. Plaintiffs had no knowledge of the fraudulent acts of Cutter or his firm, until after they had absconded. Thereupon, the bales in suit being found in defendant's warehouse, possession was demanded and was refused.

*Frederic R. Coudert* for appellants. Cutter was not guilty of larceny. (*Zinc* v. *People*, 77 N. Y. 126 ; *People* v. *Call*, 1 Denio, 123 ; 2 Bishop's Crim. Law, 817 ; *Regina* v. *Barnes*, 2 Den. C. C. 59 ; 1 Eng. L. & Eq. 579 ; *Ross* v. *People*, 5 Hill, 294 ; *Mowrey* v. *Walsh*, 8 Cow. 238 ; *People* v. *Mc-Donald*, 43 N. Y. 61 ; *Smith* v. *People*, 53 id. 111.) Any one who obtains goods under false pretenses can by estoppel create a valid title to a *bona fide* purchaser as against the person defrauded. (*Paddon* v. *Taylor*, 44 N. Y. 375 ; *Saltus* v. *Everett*, 20 Wend. 268–270 ; *Mowrey* v. *Walsh*, 8 Cow. 238–245 ; *Parker* v. *Patrick*, 5 Term R. 175 ; *Armour* v. *Mich. C. R. Co.*, 65 N. Y. 116 ; *Bassett* v. *Spofford*, 45 id. 392 ; *Weyman* v. *People*, 4 Hun, 515 ; *Zink* v. *People*, 6 Abb. N. C. 429 ; *Loomis* v. *People*, 67 N. Y. 322–325 ; *Smith* v. *People*, 53 id. 111 ; *Barnard* v. *Campbell*, 55 id. 465 ; *Covill* v. *Hill*, 4 Denio, 323 ; *McNeil* v. *Tenth Nat. B'k*, 55 N. Y. 325 ; *Ballard* v. *Burgett*, 40 id. 314 ; *Marine B'k* v. *Fiske*, 71 id. 358 ; *Craig* v. *Marsh*, 2 Daly, 61 ; *Babcock* v. *Lawson*, 20 Alb. L. J. 407 ; *People* v. *Johnson*, 12 Johns. 291 ; *Regina* v. *Barnes*, 2 Den. C. C. 59 ; *Ross* v. *People*, 5 Hill, 294 ; *People* v. *McDonald*, 43 N. Y. 61 ; *Parker* v. *Patrick*, 5 Term R. 175 ; *Peer* v. *Humphrey*, 1 H. & W. 28 ; *Root* v. *French*, 13 Wend. 570 ; *Watson* v. *People*, 33 Hun, 81.) One obtaining goods by fraudulent representations of agency is guilty, not of larceny, but of obtaining goods under false pretenses. (*Craig* v. *Marsh*, 2 Daly, 61 ; *People* v. *Johnson*, 12 Johns. 291 ; *Rex* v. *Atkinson*, 2 East's P. C..669 ; 8 Cow. 243 ; 2 Bishop on Crim. Law, § 441 ; *Commonwealth* v. *Hulbert*, 12 Metc. 446 ; *Reg.* v. *Davis*, 11 Cox's C. C. 181 ; *McCorkle* v. *State*, 1 Coldw. 333 ; *Reg.* v. *Robinson*, 9 L. Canada, 278 ; *Higgins* v. *Moore*, 34 N. Y. 422 ; French Penal Code, art. 405 ; Italian Penal Code, art. 626 ; Cass 18 Nov. 1837 ; S. V. 88, 1366.)

*M. A. Prentiss* for respondents. Cutter's offense was grand larceny. (4 R. S., chap. 1, tit. 3, art. 5, § 78 ; *Collins* v. *Ralli et al.*, 20 Hun, 246, 251 ; *Loomis* v. *People*, 67 N. Y. 322 ; *Zink* v. *People*, 6 Abb. N. C. 424, 413–14 ; *Ward* v. *People*, 3 Hill,

398; *Smith* v. *People*, 53 N. Y. 113; *Bassett* v. *Spofford*, 45 id. 391; *Weyman* v. *People*, 6 N. Y. Supr. Ct. 398; 62 N. Y. 623; *Justices, etc.* v. *People, ex rel. Henderson*, 90 id. 14; *Barnard* v. *Campbell*, 58 id. 76; 24 Hun, 658.) The cotton belongs to the plaintiffs. They have never parted with their property in or title to it. (*Saltus* v. *Everett*, 20 Wend. 275; *Covill* v. *Hill*, 4 Denio, 327; *Ballard* v. *Burgett*, 40 N. Y. 322–4; *Barnard* v. *Campbell*, 55 id. 463; *F. & M. N. B'k* v. *Logan*, 74 id. 569; *Cary* v. *Hotaling*, 1 Hill, 313; *Spraight* v. *Hawley*, 39 N. Y. 441; *McGoldrich* v. *Willets*, 52 id. 617; Benjamin on Sales [2d Am. ed.], § 433; *Cauldwell* v. *Bartlett*, 3 Duer, 340; *Keyser* v. *Harbeck*, id. 373, 383; *Craig* v. *Marsh*, 2 Daly, 61; 20 Hun, 255; *Comer* v. *Cunningham*, 77 N. Y. 399; *McNeil* v. *Tenth Nat. B'k*, 46 id. 330; *Barker* v. *Dinsmore*, 72 Penn. St. 427; *In re The Idaho*, 3 Otto, 583; *Cundy* v. *Lindsay*, L. T. [N. S.] 573; *Higgins* v. *Burton*, 5 Weekly Rep. 683; *Hardman* v. *Booth*, 7 L. T. [N. S.] 638; *Fowler* v. *Hollins*, L. R., 7 Q. B. 616.) An estoppel can arise only where the "owner has, by his own direct voluntary act, conferred upon the person from whom the *bona fide* vendee derives title, the apparent right of property as owner, or of disposal, as an agent." (*Saltus* v. *Everett*, 20 Wend. 278; *Marine B'k* v. *Fiske*, 71 N. Y. 358; *F. & M. N. B'k* v. *Logan*, 74 id. 580–586.) The fact that Cutter & Co. had warehouse receipts (though wrongly issued to Price & Co. by Richards) which were transferred to Ralli Brothers, was not conclusive evidence of title in Ralli Brothers. (*First Nat. B'k of Toledo* v. *Shaw*, 61 N. Y. 297; *Barnard* v. *Campbell*, 55 id. 462; *Kinsey* v. *Leggett*, 71 id. 395; *Hazard* v. *Fiske*, 18 Hun, 282.) The "Factors Act" does not apply to this case. (2 R. S., chap. 4, title 5; *Kinsey* v. *Leggett*, 71 N. Y. 395; *Hazard* v. *Fiske*, 18 Hun, 282; *First Nat. B'k of Toledo* v. *Shaw*, 61 N. Y. 299.) The so-called guaranty by Cutter & Co. does not affect the rights of the parties to this transaction or distinguish the case at bar from that of *Collins* v. *Ralli et al.* (20 Hun, 246, 251). (2 R. S., chap. 7, title 2, § 2; 1 Pars. on Cont. 493; *Joslyn* v.

*Don,* 19 Hun, 497; *McGregor* v. *Managers, etc.,* 16 E. L. & E. 180; *Rex* v. *Jamison,* 26 L. J. [N. S.] Mag. Cases, 146.)

DANFORTH, J. The defendant acquired all the right which Cutter & Co. had in the cotton, or which by any act of the real owner they appeared to have. His claim can go no further. One can only transfer that which he himself has, and the real owner is estopped from setting up his own right, only so far as he has allowed another to have the appearance of ownership. In *Collins* v. *Ralli* (20 Hun, 246) the referee and the General Term thought Cutter & Co. obtained possession of the cotton then in question by larceny, and upon that ground held that the defendants, who claimed under Cutter & Co., although themselves innocent purchasers, acquired no title to it against the true owner. Judgment was, therefore, rendered in his favor, and in this we concurred (85 N. Y. 637). We were satisfied with the very able opinion which led the Supreme Court to that result. The importance of the case and the argument of the learned counsel for the appellant have led to a re-examination of the question involved, but so far as it goes we see no reason to depart from that decision. Nor do we find that it conflicts at all with our judgment in *Zink* v. *People* (77 N. Y. 114; 33 Am. Rep. 589). There the prisoner had not only lawful possession of the property in question, but that possession was accompanied by evidence of title of the most formal kind, and if regarded only as an agent, he was at least intrusted with the goods for sale, with and not against the will of the owner. None of these facts appear in *Collins* v. *Ralli.*

It is said, however, in behalf of the appellant that the case now before us is not the same as the *Collins Case.* It is clearly not the same in words, and this is conceded in the opinion of the court below and by the learned counsel for the respondents.

A part of the bought and sold note in this case are the words: "Payment guaranteed by H. M. Cutter & Co. Bill to H. M. Cutter & Co." Nothing of the sort was in *Collins* v. *Ralli,* and if there is any difference in the two cases it is created by these words. The appellant claims nothing else. The ques-

tion then turns upon them. The first clause must no doubt
be taken to mean that Cutter & Co. have guaranteed payment
by their principal, and as this is one of the terms of the con-
tract, the plaintiffs may be held to have relied upon it. The
further contention of the appellant would have great force if
the second clause permitted the interpretation which the appel-
lant's counsel claims for it. He says, "if Cutter was a mere
custodian, why make the bill to him and thus furnish him with
the title to, as well as the physical possession of, the cotton." If
this assumed fact existed, the possession and document of title
would correspond and there would be no difficulty in saying
that the loss through Cutter & Co's fraud should fall upon him
who allowed them to have the appearance of owners of the cot-
ton. But I find no reason for supposing that the words "Bill
to H. M. Cutter & Co." mean that the cotton had been billed
to them. It is at most a memorandum, and, although found in
the bought and sold notes and so evidence of the contract, is to
be taken in connection with the other parts of the note, and
there we find it plainly stated that the sale is " to the Freeman
Manufacturing Co." It would, therefore, seem that the words
amounted merely to a memorandum, and taken with the rest
of the contract to mean only that the bill when made out to the
purchasers, *i. e.* to the Freeman Manufacturing Co., was to be
sent to H. M. Cutter & Co., through whom they were said to
act. But no bill appears to have been sent or made out to any
one, and there is nothing in the words themselves to require a
different holding from that of the referee, viz.: that "no bill
of sale or other muniment of title of any kind was delivered to"
them (Cutter & Co.), nor any document whatever except the
bought notes. These corresponded with the sold notes, and
they described the contract of sale as one with the manufactur-
ing company. The case cannot be treated as one where a party
has by any means obtained "title to goods" as well as the pos-
session with the assent of the owner.

It may be, as the appellant insists, that the owner was influ-
enced in the sale to some extent by the financial responsibility
of the assumed brokers, but the professed guaranty was only an-

other element of fraud, and, however it might have weighed with the referee, cannot affect the question here.

But assuming the contract to have been an authorized contract — that Cutter & Co. were really acting for the manufacturing company, then we are to inquire as to the effect of their contract of guaranty. It was one of the terms of sale and the seller must abide by it. Cutter & Co. assumed to act for the apparent purchasers as brokers. As such they would have had a lien for advances made and expenses incurred, and probably, in case of insolvency of the real purchaser, a right to hold the cotton for indemnity against their liability to loss. But there would be no right of property or sale, save to enforce the lien, and its very existence would imply the right of property to be in some other person. That right was in the plaintiffs; it has never been diverted; nor was there in fact even a lien to be enforced. The case is a very hard one for the defendant and for those whom he represents, but the persons under whom they claim had no title, nor had the plaintiffs armed him with " any symbol of property." Both plaintiffs and defendant are innocent, and there is no reason, therefore, why the former should be a sufferer rather than the latter.

The judgment appealed from should be affirmed.

All concur, except RUGER, Ch. J., and RAPALLO, J. not voting.

Judgment affirmed.