ROBERT SOLTAU, PLAINTIFF, *v.* OTTO GERDAU, DEFENDANT.

*What constitutes larceny — when the wrongful possessor of personal property cannot give a good title thereto to a* bona fide *purchaser for value.*

Where the owner of personal property parts with its possession to a broker, only for the purpose of having it delivered to a certain vendee under a contract fraudulently alleged by the broker to have been secured by him, the owner reserves a right of property, and a fraudulent sale of the property by the broker to another party constitutes larceny.

Such purchaser, although a *bona fide* purchaser for value, is not protected in his purchase as against the original owner. Nor is he protected by the factors' act (chap. 179 of 1830), as its provisions do not extend to stolen property.

Although, since the provisions of section 528 of the Penal Code took effect, the former offense, of obtaining property by false pretenses has been declared to be larceny, yet the distinction which existed prior to such Code, between obtaining property by false pretenses and the crime of larceny, so far as the rights of parties purchasing the property from the wrongful possessor are concerned, is still observed.

EXCEPTIONS taken by the defendant to a verdict directed against him at the New York Circuit, ordered to be heard in the first instance at the General Term.

The plaintiff, for some time previous to the transaction which eventuated in this action, had employed one Henry A. Smith, a broker in rubber, to sell that article. The plaintiff conducted this business through Smith "mysteriously," as he described it, by which he meant that his name was not to be divulged, to avoid competition, but Smith was, nevertheless, to act for his principal though undisclosed. It was not, therefore, the understanding between them that

Smith was to act in his own name only. He was, on the contrary, employed only as a broker, inasmuch as he sought contracts, submitted them to the plaintiff, who, if he approved of them, ordered the rubber if it were not on hand, or directed its delivery if it were, on receiving the contract usual in such dealings. This action was brought to recover from the defendant seventy-six baskets of prime Borneo rubber, F. F., which were alleged to be wrongfully and illegally detained by him. He obtained them under these circumstances: The plaintiff, who is an importer of rubber and gutta percha, imported the rubber on the steamer Canada, which arrived at New York on February 22, 1885, said seventy-six baskets being part of a consignment of ninety-three baskets of rubber of the same quality. The entire consignment was imported by the plaintiff for the purpose of fulfilling a pretended order therefor from the B. F. Goodrich Company, of Akron, Ohio, claimed to have been obtained in December, 1884, by Smith. Smith had, on December, 7, 1884, in his capacity as broker, delivered to the plaintiff a sold note for the rubber in the following form:

"NEW YORK, *Dec.* 7, 1884.

"Sold to the B. F. Goodrich Co., Akron, Ohio.

"For account of Robert Soltau, Esq., about twenty-two thousand (22,000) lbs. of prime Borneo rubber (marked F. F.) to be delivered during the first half of the month of March, 1885, a 40c. per lb., half cash sixty days after delivery and half cash 90 days after delivery.

"H. A. SMITH,

"Half brokerage to H. A. S., broker in india rubber, 17 William street.

"No responsibility taken unless by special agreement."

Upon the arrival of the rubber, per steamer Canada, the plaintiff gave Smith, as broker, a delivery order therefor, which read as follows:

"Please deliver to bearer, F. F., ninety-three baskets of Borneo rubber Ex. Canada arrived February 22, 1885."

This order was given by the plaintiff to Smith, as broker, for the sole purpose of enabling him to make delivery of the rubber to the

Goodrich Company of Akron, Ohio, pursuant to the supposed contract contained in the sold note above set forth. As the plaintiff testified, "It was given to him to get the goods and ship them, on the strength of that contract which he handed me, to the B. F. Goodrich Company of Akron, Ohio." After this delivery order was given to Smith he stated to the plaintiff that the rubber had, in fact, been shipped to the Goodrich Company, in fulfillment of the supposed contract of sale; but the truth of the matter was that the alleged contract sent by the broker to the plaintiff was a pure fabrication, the broker not having obtained any such contract, or even had any negotiation for a sale of the rubber to that company.

The broker got possession of the rubber by means of the delivery order given to him by the plaintiff, and, on March 2, 1885, stored the rubber in the warehouse of Lawson B. Bell, No. 518 Washington street, and took out a negotiable warehouse receipt for it in his own name in the form following:

No. A. 326.                              "NEW YORK, *May* 6, 1885.

"Received on storage, in 516–18 Washington St.

"From Mr. H. A. Smith and deliverable only upon the return of this receipt.

"Marks Ex. S. S. Canada, March 2.

"Lawson B. Bell, "85, F. F., 76 baskets (76) seventy-six baskets rubber, storage 4c. per month, labor in and out 4c.

"(Indorsed.)        H. A. SMITH."

Subsequently Smith stated to the plaintiff that M. Goodrich, of said Goodrich Company, desired to return seventy-six of the ninety-three baskets of rubber claimed to have been shipped to that company on the supposed contract, and thereupon the plaintiff instructed him to take back the seventy-six baskets so desired to be returned. This he made a pretense of doing, and, on April 23, 1885, he wrote a note to the plaintiff stating that he had secured the seventy-six baskets from Goodrich, and at the same time sent to the plaintiff a pretended contract for the sale of the said rubber to the Boston Rubber Shoe Company, such pretended contract being as follows:

" NEW YORK, *April* 23, 1885.

" Sold to Boston Rubber Shoe Co.

" For account of Robert Soltau, Esq., about five (5) tons of prime Borneo rubber, to be delivered at any time during the month of July, 1885, at 43c. per lb. net cash 30 days after delivery.

" (H. A. SMITH.)

" No responsibility taken unless by special agreement.

" H. A. SMITH,
" *Broker in India Rubber,*
" 17 *William Street.*"

But at this time there had not been, nor was there subsequently, any negotiation whatever between the broker Smith and the Boston Rubber Shoe Company for the sale of the rubber mentioned in the foregoing pretended contract. After sending this last-mentioned contract to the plaintiff, Smith stated that he had the seventy-six baskets mentioned therein stored in the warehouse of E. E. Driggs, in the name of the plaintiff. The plaintiff requested Smith to deliver to him the warehouse receipts, but he made excuses and the pretended receipts were never delivered to the plaintiff; for all the time the broker, as already stated, had the rubber stored in his own name in the warehouse of Lawson B. Bell. And for the purpose of further concealing his conversion of the rubber, he got from the plaintiff, on or about June 29, 1885, and just before the latter's departure from New York for Europe on July 1, 1885, a delivery order for the rubber, addressed to the warehouseman Driggs, with whom the plaintiff supposed the rubber to be stored, in his (the plaintiff's) own name, such delivery order reading as follows:

" Please deliver to bearer, F. F., 76 baskets Borneo rubber and oblige yours truly.

" ROBERT SOLTAU."

The plaintiff did not return to New York until December 13, 1885. On his arrival he found that, at the instance of his managing clerk, a warrant had been issued for the arrest of Smith, who was subsequently taken into custody by an officer under the warrant and examined at the Police Court before Judge DUFFY. At the close of the first session of such examination Judge DUFFY admitted Smith to bail and adjourned the further hearing of the case, but before the

adjourned day Smith left the State, and when last heard from was in Toronto, Canada. The defendant admits that he got the seventy six baskets of rubber from Smith. He claims to have made an advance of $2,000 to Smith on the negotiable warehouse receipt of Lawson B. Bell. The rubber was delivered to the defendant under this receipt on October 7, 1885, at which time the defendant took the rubber to his own warehouse, where it remained for about three weeks until October 23 or 24, 1885. The defendant then sold the rubber, as he claims, for thirty-nine cents per pound, and paid the proceeds of the sale, less the advance and interest, to the broker Smith.

There is no evidence on the record, nor is it claimed by the defendant, that the plaintiff ever made any representations to the defendant, with reference to the rubber in question. The defendant, in making the advance which he claims to have made, relied entirely upon the warehouse receipt for the rubber standing in the name of the broker Smith, obtained, as already stated, by the fraudulent means adopted after the plaintiff had given to Smith a delivery order for it, for the specific purpose of enabling him to fulfill the supposed contract with the Goodrich Rubber Company, of Akron, Ohio. A bill for the entire consignment of ninety-three baskets of rubber, per steamer Canada, was sent by the plaintiff to the broker Smith on or about March 2, 1885. This bill was made out to Mr. H. A. Smith for "Goodrich," and is receipted as if paid in full. But the seventy-six baskets now in controversy were never paid for, and the bill was receipted in full, simply because those seventy-six of the ninety-three baskets were to be returned by the Goodrich Company, and payment of the remaining seventeen baskets had been assumed by Smith. Subsequently, and on or about July 3, 1885, a bill for these same seventy-six baskets, claimed as above stated to have been returned by the Goodrich Company, was sent to Smith, such bill being made out to Smith "for the Boston Rubber Shoe Company, bought back from Goodrich."

Prior to the transactions here in question the plaintiff had employed Smith as a broker to sell rubber for him, upon an understanding that the plaintiff's name should not be known in the transactions which were had by Smith with the purchasers of the rubber, as already stated. The object of keeping the plaintiff's name

undisclosed to the buyers was to prevent competition. As the plaintiff testifies : " If my name was known, the competition would come in and offer lower prices." In selling the plaintiff's rubber, Smith, therefore, acted for an undisclosed principal. But his general relation to the plaintiff was broker, and not that of purchaser or general agent. With the exception of a single delivery of twenty-two baskets, which the plaintiff admits were sold to Smith, and some sample cases, no rubber was delivered by the plaintiff to Smith save for the purpose of enabling him to fulfill a specific contract of sale previously communicated to the plaintiff by means of a sold note. The sales were always made by Smith, and the plaintiff looked to him, both to collect from the various purchasers of the rubber, and to turn over the proceeds when collected. No bills were sent by the plaintiff to the purchasers of the rubber. In turning over the collections to the plaintiff Smith used his own checks; but the payments so made were always for a specific part of the rubber sold."

Upon these facts the court denied a motion, made on the part of the defendant, to dismiss the complaint and for a verdict, and also his request to go to the jury on certain supposed questions of fact, and ordered a verdict for the plaintiff, to all of which decisions and directions the defendant excepted, and the exceptions were directed to be heard in the first instance at General Term and judgment in the meantime suspended.

*J. H. Choate*, for the plaintiff.

*E. B. Cowers*, for the defendant.

Brady, J. :

These facts lead but to one conclusion, assuming them to be true, and that is, that Smith committed a theft of the rubber, and was guilty of larceny. Prior to the Penal Code a distinction existed between larceny *eo nomine* and the crime of obtaining property by false pretense, which protected the purchaser, inasmuch as the latter offense then involved not only the transfer of possession but the right of property also, as the result of the fraud successfully practiced. These distinctions were admirably and fully stated by Justice Pratt in *Collins* v. *Ralli* (20 Hun, 246), and adopted by the Court of Appeals where the judgment was affirmed on his opinion. (See 85 N. Y., 637.)

In either case (*The People* v. *Dumar*, 106 N. Y., 507), the property may have been obtained by artifice or fraud. The distinction mentioned, illustrated by the cases referred to, namely, *Bassett* v. *Spofford* (45 N. Y., 387); *Zink* v. *People* (77 id., 114); *Thorne* v. *Turck* (94 id., 90); *People* v. *Morse* (99 id., 662), continued, as also observed by Justice DANFORTH, until the adoption of the Penal Code in 1881, which, recognized "that the moral guilt of the two offenses was the same, and swept away the theory by which the courts had felt constrained to distinguish them in principle." And consequently, by section 528, it was provided that a person who, with the intent to deprive or defraud the true owner of his property, or of the use or benefit of, or to appropriate the same to the use of the taker or of any other person, either takes from the possession of the true owner or of any other person, or obtains it from such possession by color or aid of fraudulent or false representation or pretense, or of any false token in writing, *steals* such property and is guilty of larceny. There are other provisions enlarging the sphere of the section, but enough is quoted to show that Smith, on the evidence given herein, was guilty of larceny, having, as he did, obtained possession of the rubber by fraudulent or false representation or pretense, and with the intent to deprive the plaintiff of the benefit of it, which he did. By this discussion of the provisions of the Penal Code it is not intended to declare that the distinction which existed prior to the Penal Code between larceny *eo nomine* and obtaining goods by false pretenses no longer exists. On the contrary, it is thought that the case referred to, recognizing the distinction, must prevail until it is otherwise decided by the court of last resort or changed by an act of the legislature.

In the consideration of this appeal, therefore, the distinction is kept in view, so that if the defendant has any right resulting from it, it must be declared and secured. It is thought, however, upon all the facts and circumstances considered with regard to the decision in *Hentz* v. *Miller*, and keeping in mind the distinction referred to, that Smith, the broker, intended to appropriate the rubber to his own use when he reported the false contract by which he obtained possession of it. This, indeed, was the basis of the whole transaction. It was followed by the warehouse incident, in which he took a receipt in his own name instead of that of his principal, falsely

informing the latter, nevertheless, that the rubber was stored in his name and in a different warehouse, and further by the sale of the rubber and the appropriation of the proceeds. The case is the same in all its essential elements as *Hentz* v. *Miller* (94 N. Y., 64). In that case a broker falsely represented that his firm had orders to purchase 100 bales of cotton, and the plaintiffs, relying thereon, contracted to sell to the vendee named. Bought and sold notes in the usual form were delivered by the plaintiffs in which the sale was stated to have been made to the vendee named. No bill, warehouse receipt or other muniment of title was in fact delivered to the brokers making the representations, but the cotton itself was delivered to them by transfer to the supposed purchaser. They, however, placed it in a warehouse, obtained advances upon the warehouse receipt, and it was subsequently sold to *bona fide* purchasers. It was held that the transaction, by means of which the brokers obtained possession, was a larceny. In the opinion expressed it was said to be a very hard case for the defendant, and no doubt it was.

The claim of the defendant rests substantially upon the proposition that the acts of Smith constituted the offense, if any, of false pretenses, which enabled him to confer a title to the rubber. But this proposition, in view of the case just cited, cannot be sustained. Indeed, under the adjudications before mentioned, the charge of larceny is sustained for the reason that the plaintiff parted with the possession of the rubber only for the purpose of having it delivered to the vendees under the contracts secured by Smith reserving a right of property therein.

There seems to be no doubt upon this branch of the case that the defendant, independently of the provisions of the Penal Code (*supra*), acquired no right by his advances to Smith which he could enforce, but rather that it became the duty of the judge presiding at the trial to reject his asserted claim. The defendant insists, nevertheless, that he is not deprived of his defense, inasmuch as he is protected by the factor's act, but in this he is in error, inasmuch as its provisions have not been extended to cover stolen property. This proposition is well stated and sustained in *Collins* v. *Ralli* (*supra*), and is founded upon decisions of the court of last resort duly cited. Upon this feature of the defense the defendant must also fail. It

is true that it was sought to be maintained by inference that the plaintiff had sold the rubber to Smith absolutely, and vested him, therefore, with the *jus disponendi*, but this proposition, however ingenious, cannot derive any countenance from the facts. The plaintiff's statement to the contrary is not gainsayed, and though some correspondence and bills appear bearing upon the subject they are explained clearly by the mode in which the business was conducted between Smith and the plaintiff, which was done, as the plaintiff said, mysteriously, in order to prevent competition, although it will have been perceived that in the broker's notes the sale is said to be for account of Robert Soltau. The plaintiff never by any of the incidents, as understood both by him and Smith, intended to regard. the latter other than as his broker in whom he had confidence. The acts of both Smith and plaintiff so clearly establish this that a verdict to the contrary could not be sustained. This is not, either, a case in which it appears that the plaintiff voluntarily placed Smith in possession of the *indicia* of title and thus enabled him to practice upon the unwary. His act in this regard, having been induced by fraud, was involuntary and by force. (*People* v. *De Leon*, 47 Hun, 308.) The discussion of these two questions involves and embraces all the others presented upon behalf of the defendant, which are collateral to them and must fall with the main contention.

The exceptions, must for these reasons, be overruled, and judgment sustained, with costs.

DANIELS, J., concurred.

Exceptions overruled, and judgment sustained, with costs.