DANIELS, J., concurs. VAN BRUNT, P. J., concurs in result.

---

SOLTAU *v.* LOEWENTHAL *et al.*

(*Supreme Court, General Term, First Department.* May 18, 1888.)

1. SALE—BY BROKER—WHEN NOT SUFFICIENT TO PASS TITLE—PEN. CODE, § 528.

A broker, by means of a false sold note, obtained from his principal a lot of rubber for delivery on the note, stored the rubber in his own name, and subsequently sold it to defendants. *Held*, under Pen. Code, § 528, providing that any one who, with intent to deprive or defraud the true owner of his property, obtains it from his possession by color or aid of any false token or writing, steals such property, that the broker, having obtained possession of the rubber by larceny, could convey no title to the same to defendant. Following *Soltau v. Gerdau, ante*, 163.

2. TRIAL—INSTRUCTIONS—PARTNERSHIP—EVIDENCE OF.

. A broker, by means of a false sold note, obtained from plaintiff a lot of rubber, to be delivered on the note, stored the rubber in his own name, and sold it to defendants. *Held*, in an action to recover the rubber, that it was error to charge that if plaintiff and the broker were partners in all transactions connected with the sale, and that the goods were to be sold in the broker's name without disclosing the name of the principal, there could be no recovery, where there was no evidence of a partnership.

2. SAME—INSTRUCTIONS—CREDIBILITY OF WITNESSES.

In an action to recover a lot of rubber, the court charged the jury that they were authorized to reject the testimony of interested witnesses, if they felt, on all the evidence and circumstances of the case, that such evidence was untrue. *Held* error, as creating the impression that such evidence was to receive no consideration.

Appeal from circuit court, New York county.

This action was brought by Robert Soltau against Charles Loewenthal and others to recover certain rubber. Verdict and judgment for defendants and plaintiff appealed. For the main facts in the case and the provisions of Penal Code, § 528, and the factors' act bearing thereon, see *Soltau v. Gerdau, ante,* 163.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Joseph H. Choate,* for appellant. *Frederick R. Caudert,* for respondent.

BRADY, J. The plaintiff sought to recover certain baskets of Borneo rubber which he alleged were wrongfully detained by the defendants. The plaintiff's claim rested upon the felonious act of his agent or broker, Henry A. Smith; and the defendant's, upon a purchase from him, predicated of a warehouse receipt, from which it would seem that he was the owner of the goods. The plaintiff had employed Smith, who was a broker in rubber, for some time before the sale by him to the defendants, and had paid him his commissions earned as such. The plaintiff conducted the business mysteriously; that is, not wishing to have it known that he was dealing in rubber, he required his broker to make contracts for an undisclosed principal. The reason for this was not in any sense wrong, but only to prevent competition, by which it was thought the business would be endangered, if not destroyed. This is the only respect in which it was mysterious or unusual, although it involved sequences that were strange, it was thought, when subjected to the criticism of business men in ignorance of the arrangement mentioned, but perfectly well understood between the parties. The course of dealing, as established and conducted by plaintiff and Smith, was simple enough to be easily understood. Smith obtained the contracts; and the plaintiff, upon receipt of them,

if he approved of them, sent for the rubber, and when it arrived, or if he had it on hand, gave the necessary authority for Smith to obtain it, but for delivery only to the purchasers whom he reported. Such contracts were made in reference to the rubber in question as shown by the broker's notes given plaintiff, in which it appears that the rubber was sold for his account. The rubber, however, purchased by the defendants, as we shall see, seems to have been stolen from the plaintiff. Smith, apparently with intent to deprive the plaintiff of the benefit of it, and to appropriate it to his own use, reported sales by broker's notes in the usual form, and which were fraudulent; no purchase having been made, as stated in the notes. Upon these he obtained the order for the delivery of the rubber to him, but for the purpose only of delivering it to the purchaser named. He did not thus deliver it,—indeed, could not, the sales reported by him not having been made,—but stored the rubber in his own name in a warehouse, and took negotiable receipts therefor. He subsequently sold it to the defendants, and appropriated the proceeds to himself. The defendants, in making the purchase, relied upon the warehouse evidence of title, and reasonably so; not supposing for a moment that they were dealing with stolen property. They believed in the honesty of Smith, and so did the plaintiff, by whom he had been employed and intrusted with the rubber business, which was in his line as a rubber broker. The defense was twofold: *First,* that, in point of fact, Smith was either a purchaser from Soltau, or his agent with full power to sell and collect; that he was either owner, or, at least, clothed with sufficient authority over the property in controversy to pass title thereto, and receive the proceeds, so that his action in the premises became valid and binding upon Soltau; and, *secondly,* that he was intrusted by Soltau with documentary evidence of title, and actual possession of the property for purposes of sale, upon the faith of which the defendant purchased, so that plaintiff's dealings come within the third section of the factors' act. In *Soltau* v. *Gerdau, ante,* 163, (decided herewith,) it is shown that the distinction between the crime of larceny and obtaining goods by false pretense, as a part of our criminal jurisprudence, has been swept away by the Penal Code, and there is no longer any difference in the quality of the offense criminally; but that the rule which enabled a party to pursue property stolen from him, and recover it wherever found, but prevented him from reclaiming it from an innocent purchaser when obtained by a false pretense, still prevailed as a part of our commercial law. The facts and circumstances herein controlling are kindred to those in *Soltau* v. *Gerdau, supra,* in which all the elements of larceny are present and prominent, and bring the case within the rule declared in *Hentz* v. *Miller,* 94 N. Y. 64, and upon the authority of which a verdict for the plaintiff in *Soltau* v. *Gerdau,* was sustained. It is not necessary to prolong this discussion, therefore, on that subject. The plaintiff's goods having been taken from his possession by larceny, there can be no doubt of his right to follow and recover them. This is not disputed. The exceptions taken by the plaintiff herein are numerous, and comprehensive enough to cover the point suggested. Of this there can be no doubt. It may be said here, as it was in *Hentz* v. *Miller, supra,* that this is a hard case; but that does not relieve this court of its responsibility. The duty is often imposed of declaring results which seem to be harsh, if not in direct conflict with the principles of natural justice.

If, however, this be regarded as an extreme view of the rule governing the relations between the parties established by the facts disclosed, nevertheless the judgment cannot be maintained, for the reason that the learned justice, at the request of the plaintiff, charged the jury, under exception: "(10) that if the jury find that the contract made between the plaintiff and Smith for the sale of the rubber in question was one whereby they became partners in all the transactions connected with such sale, with the understanding that all the goods were to be sold in Smith's name, and that the name of the plaintiff should

not be disclosed, their verdict must be for the defendant." There is no evidence to sustain a finding that there was a partnership existing as to the goods in question, and therefore there was no basis for such a charge. There was no pretense that Smith contributed in any way to the purchase of the rubber, and although the case discloses that, as to some transactions, there was some understanding as to a general interest, such a relation does not, by the evidence, characterize that in reference to the rubber in question. It is well settled that, to constitute a partnership, there must be an agreement of the parties, not only to unite their stock, but to share in the risk of profit or loss by the disposition to be made of it; and even where several parties agree to purchase personal property in the name of one of them, and to take aliquot shares of the profits, without agreeing to do so generally, there is no partnership. *Baldwin* v. *Burrows*, 47 N. Y. 199. In that case it was also decided that where several distinct grounds of liability are submitted to the consideration of the jury as a basis for their verdict, if either was improperly submitted, and the verdict was a general one, the judgment will be reversed, unless it appear that some one of the grounds was so clearly established by uncontroverted evidence as to have rendered it the duty of the court to direct a verdict for the plaintiff. None of the grounds which favored the defendant rested upon uncontroverted evidence clearly establishing it, and therefore the case is not within the exception suggested.

It may be also said that an error was committed thus: The learned justice instructed the jury that they were authorized to reject the testimony of interested witnesses if they felt that, upon all the evidence in the case and the circumstances of the case, such evidence was not true; qualifying that observation, however, with the remark that the evidence which they gave, being uncontradicted, was entitled to weight. After this instruction was given, the learned counsel for the plaintiff (apparently as an independent proposition, although by a dubious course of reasoning it may probably be connected with the charge as stated) suggested to the court that it might be disregarded as coming from interested parties; to which the court responded: "Yes; it may be disregarded as coming from interested parties." This declaration of the learned court did not, according to the language, show any connection with what had previously been said; but left it to appear as a naked proposition that the evidence of interested parties might be disregarded because it came from them as such. In *Moran* v. *McLarty*, 75 N. Y. 25, Justice MILLER said: "It would be a rare and extraordinary case which would justify a general term, in the discharge of its duties, to hold that the testimony of a witness which was merely contradicted, and not otherwise impeached, should be entirely disregarded and set at naught as utterly false and untrue." See, also, *Fralick* v. *Stafford*, 11 Wkly. Dig. 327. It may be also said that there are very few instances in which the court or jury are authorized to disregard the controverted testimony of witnesses. It is to be considered, not disregarded, and, if held to be unreliable, unworthy, and incredible, may be rejected; but to disregard it is to reject it absolutely, and to withhold from it any consideration whatever. It may be, as suggested, that the charge on this request can be connected with what was said just preceding it; but, as it appears in the case, it stands by itself, and cannot be said to have been without prejudice to the plaintiff. It might and doubtless did create the impression that, as the witnesses in question were interested, their testimony need not receive any consideration whatever. If such an impression as that was created, it was erroneous, prejudicial, and cannot be sustained.

The judgment appealed from must therefore be reversed, and a new trial ordered, with costs to appellant, to abide event.

DANIELS, J., concurs. VAN BRUNT, J., concurs in result.