(139 App. Div. 509.)

SCHMIDT v. SIMPSON.

(Supreme Court, Appellate Division, First Department. July 7, 1910.)

FACTORS (§ 62*)—PROTECTION UNDER FACTOR'S ACT—PLEDGEE.

Factor's Act (Laws 1830, c. 179) §§ 3–6, now Personal Property Law (Consol. Laws, c. 41) § 43, provides that every factor or other agent intrusted with the possession of any bill of lading, customhouse permit, or warehouseman's receipt for the delivery of any goods, and every such factor or agent not having the documentary evidence of title, who shall be intrusted with the possession of any merchandise for the purpose of sale or as a security for any advances to be made or obtained thereon, shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with any other person for the sale of such merchandise for any money advanced, etc. *Held*, that neither a broker in precious stones who received jewels, not in the ordinary course of business from dealers, but from a private owner, to be sold at a fixed price, and on a specified commission, nor a pawnbroker to whom such broker wrongfully pledged the jewels, were within the purview of the act, and though the pawnbroker acted in good faith he was liable to the owner, the broker in pawning the jewels committing larceny, and being able to transfer no better title than he had.

[Ed. Note.—For other cases, see Factors, Cent. Dig. § 93; Dec. Dig. § 62.*]

Scott, J., dissenting.

Appeal from Trial Term, New York County.

Action by Joseph J. Schmidt against Thomas Simpson. From a judgment for plaintiff and from an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Blandy, Mooney & Shipman (Charles Blandy, of counsel), for appellant.

Dos Passos Bros. (John R. Dos Passos, of counsel, Louis S. Posner and Cyril F. Dos Passos, on the brief), for respondent.

CLARKE, J. This is an action upon an assigned claim to recover the possession of certain jewels or their value pawned with the defendant, a licensed pawnbroker. Plaintiff's assignor, an English woman, was traveling with her husband in this country, when, on the eve of her sailing for home, from the city of New York, certain circumstances arose in consequence of which she desired to sell a portion of her personal jewelry. She and her husband took the jewelry to a

reputable shop upon Fifth avenue and offered it for sale. She was told that the house did not buy jewelry over the counter and recommended her to one Charles A. Weber, as a broker in jewelry. Mrs. Kufeke and her husband went to Weber's office, told him how she had come to visit him and exhibited the jewels and requested him to sell them for her. She placed a price upon each of the articles, and stated that they were only to be sold at the prices she had given. Thereupon there was a discussion about the charges for cabling, and it was finally agreed that Weber was to have a 10 per cent. discretion on the prices given to save the cost of cabling, and he was to receive 5 per cent. on the sale, and she handed him the jewels and received the following paper:

Charles A. Weber, Dealer and Broker in Precious Stones, 320–322 Fifth Avenue, New York.

Telephone 734 Madison Square.

August 14, 1906.

Received from Mrs. L. L. Kufeke, Delaford, Waterloo Park, Liverpool, England.

| | |
|---|---|
| 1 Opal and diamond bracelet | 200 00 |
| 1 Ruby    "      "      " | 325 00 |
| 1 Emerald    "      " | 750 00 |
| 1 diamond Crescent | 2,750 00 |
| 1 diamond necklace | 1,750 00 |
| 1 diamond pendant | 1,600 00 |
| 1 Emerald & 2 stone Dias ring | 600 00 |
| 1 Sward Emeralds Dias Rubies 2 Saph | 250 00 |
| 1 3 stone Diamond ring | 600 00 |
| 1 5 stone Ruby ring Siam | 200 00 |
| 1 5 stone    "      " | 250 00 small |
| 1 Ruby and 2 diamonds set as ring | 750 00 |
| | 10,020 00 |
| | 250 00 |
| | 9,770 00 |

Charles A. Weber,
Per Frank P. Weber.

The above to be sold
Less 10 pr. cent. on all.

The $250 subtracted from the total represented one of the pieces of jewelry at that price which was withdrawn and not left with Weber. Mrs. Kufeke and her husband sailed the next day, and the same day Weber pawned the jewelry with the defendant for $4,500. Some time afterwards Mrs. Kufeke, in response to a letter of inquiry, received a reply from Weber's trustee in bankruptcy that he had become a bankrupt, and that the pawn tickets were held subject to her order. She thereafter assigned her claim to the plaintiff, and this suit was brought.

Upon the trial a stipulation was entered into conceding most of the above facts as outlined, and that no question of the identity of the goods would be raised, and that for the purposes of the trial it was admitted that the jewelry was worth $8,000, and:

"That at the time the defendant advanced the said money he was wholly ignorant of the fact that the said goods were not owned by the said Weber,

or that the said Weber was employed by Mrs. Kufeke to sell at the prices named in said schedule A, or that he was employed by her to sell the same, and that defendant acted in good faith as a pawnbroker and made such advances on the security of the pledge of the said jewelry."

A question of law only is presented upon this record. The appellant conceded upon the argument in this court that under the common law there would be no defense. He claimed, however, that he came within the terms of the factor's act (chapter 179 of the Laws of 1830, now section 43 of the personal property law [chapter 41, Consol. Laws]), which provides as follows:

"Section 1. Every factor or other agent, intrusted with the possession of any bill of lading, custom house permit, or warehouseman's receipt for the delivery of any merchandise, and every such factor or agent not having the documentary evidence of title, who shall be intrusted with the possession of any merchandise for the purpose of sale, or as a security for any advances to be made or obtained thereon, shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with any other person, for the sale or disposition of the whole or any part of such merchandise for any money advanced, or negotiable instrument or other obligation in writing given by such other person upon the faith thereof."

The contention being that Weber, having been intrusted with the possession of the jewelry for the purpose of sale, became the factor or agent alluded to in the statute, and therefore was to be deemed to be the true owner thereof so far as to give validity to the contract made by him with the defendant for the disposition of such merchandise for the money advanced by the defendant upon the faith thereof.

It seems to me that the factor's act does not apply. It was undoubtedly passed for the purpose of relieving ordinary mercantile transactions from the strict rule of the common law. Its purpose was to facilitate business. It covered two classes of transactions: First, those of factors or other agents intrusted with the possession of any bill of lading, customhouse permit, or warehouseman's receipt for the purchase of any merchandise; that is to say, the ordinary documentary indicia of ownership customarily used in commerce, taking the place of the actual possession of bulky articles, and customarily passing in the course of trade as good delivery, and made use of with banks to obtain the ordinary advances upon goods arriving and to arrive. Second, and every such factor or agent; that is, a factor or agent ordinarily doing the kind of business theretofore enumerated in the statute, who shall be intrusted with the possession of any merchandise for the purpose of sale or as the security for any advances to be made or obtained thereon.

There was no such mercantile transaction in the case at bar. Weber was a broker and dealer in precious stones. He received the possession thereof, not coupled with a general power of sale, but with a restriction as to price. He received them, not in the ordinary course of business from merchants or dealers, as merchandise, but as the personal adornments of a lady who was forced to sell. They were to be sold for her at the price fixed by her, and from the proceeds he was to receive 5 per cent. commission. In violation of his obligation, he appropriated them to his own use by immediately taking them to a

pawnbroker and pledging them for about half their value, which he received and kept. This surely was not an ordinary mercantile transaction; nor does the pawnbroker come within the purview of the act. He is under a special body of law; he is required to obtain a license, to give a bond, to keep specified books which are open to inspection by the courts and the police authorities; and he is permitted to take a very large rate of interest upon the loans advanced upon the pledge of personal property. He exists to accommodate the necessities of the poor and is not a recognized instrument in the ordinary trade and commerce of the country in regard to which the factor's act was passed.

While it is true that it is conceded in the case that he acted in good faith, yet that does not help him if Weber was not such factor or agent as was covered by the terms of the statute. Weber committed larceny and could transfer no better title than he had.

In Heilbron v. McAleenan, 1 N. Y. Supp. 875, a pawnbroker's case, Van Brunt, P. J., said:

"There was no general power of sale given to Jacquin; only the power to sell and deliver to a particular person, collect the money from this particular person, and receive from such person's money his brokerage—circumstances precisely analogous to those presented in the case of Soltau v. Gerdau, 119 N. Y. 380 [23 N. E. 864, 16 Am. St. Rep. 843]."

I do not understand that a restriction to sell to a particular person is any greater restriction than to sell at a particular price.

In Anderson v. McAleenan, 8 N. Y. Supp. 483, the court said:

"The jury were correctly charged that if plaintiff delivered the diamond ring referred to in the complaint to Alexander Katen, with authority to exhibit it to a particular person, and to sell it to such person if the latter wished it, said Katen was not thereby given a power of disposition sufficiently broad to enable him to pledge said ring."

I do not think that the Legislature ever intended to include such a transaction as is here presented within the provisions of the factor's act.

The judgment and order appealed from should, therefore, be affirmed, with costs to the respondent.

INGRAHAM, P. J., and LAUGHLIN and MILLER, JJ., concur.

SCOTT, J. I dissent, although in so doing I am not to be understood as expressing the opinion that pawnbroking transactions always, or even generally, fall within the purview of the factor's act. The circumstances surrounding this case are unusual. In the first place, the jewels came lawfully into the hands of Weber, having been voluntarily intrusted to him by the owner for absolute sale and disposition. There was therefore no larcenous taking, no qualified possession, and no restriction upon the person to whom a sale was to be made, and therefore the authorities which have held the factor's act to be inapplicable to such case need not be considered. Weber undoubtedly fell within the language of the act, being an "agent, not having the documentary evidence of title who was intrusted with the pos-

session of merchandise for the purpose of sale." The statute embraces two classes of factors or agents, those who have been intrusted with the documentary evidence of title, and "every such factor or agent," who, not having been intrusted with the possession of the documentary evidence of title, has been intrusted with the actual possession of the merchandise. It is not clear just what meaning the Legislature intended to give to the qualifying word "such"; but the most favorable meaning to attach to it, so far as concerns the respondent here, is to hold that the Legislature meant that the factors or agents whose authority to dispose of merchandise might be inferred from the actual possession thereof must be such as in the ordinary course of their known business might from the very nature of their business be persons to whom others would be likely to intrust merchandise, or the documentary evidence of title thereto, for purposes of absolute disposition. My only doubt is whether this is not giving too restricted a meaning to the word "such." Certainly no more restricted meaning can be given to it, without destroying, in large part, the very purpose for which the act was passed. But under this closely restricted meaning, still I think that the act applies to the present case.

The receipt in evidence shows that Weber was engaged in the business of "dealer and broker in precious stones," that his place of business was on Fifth avenue, and it appears that he had been designated to plaintiff's assignor by a well-known and reputable firm of jewelers, as a person who dealt in jewelry and precious stones, and who would be a proper person to undertake the sale of her jewelry. It may be assumed, without much violence, that he was also known to defendant as a dealer in such merchandise, and he was certainly a person to whom it would be both natural and reasonable that jewelry, or in a proper case the evidences of title thereto, might be intrusted for sale. In my view, therefore, Weber was an agent, within the meaning of our factor's act, who had been intrusted with merchandise for the purpose of sale. Indeed, I think that he would even fall within the language of the English act which speaks of a "mercantile agent," which has been defined to designate "persons of the class ordinarily carrying on the business of mercantile agents." Hastings Ltd. v. Pearson (1893) L. R. 1 Q. B., 62, for such is precisely what Weber appears to have been.

Of course it cannot be successfully contended that jewelry per se is not merchandise. It is our common knowledge and experience that it is the subject of great business enterprise, of sale and barter, and of importation and exportation. True the jewelry owned by plaintiff's assignor, while retained by her for personal adornment, was withdrawn from trade and for the time ceased to be "merchandise" as that term is ordinarily used; but when she determined to dispose of it, and intrusted it to an agent for sale to any one who would purchase at her price, she restored her jewelry to the channels of trade and reinvested it with the character of merchandise. The prevailing opinion intimates that, even if all the other statutory conditions be present, still that the defendant, because he is a pawnbroker, cannot avail

himself of the protection of the factor's act, and the inference is that, if the loan had been made under like circumstances by a bank or banker, the factor's act might be found to apply. I am unable to see the force of this distinction. The business of pawnbroking is not anathema in the eye of the law; but, on the contrary, while strictly regulated, it is in other ways highly favored. In many countries it is deemed so important and honorable that it is engaged in by the government as an administrative monopoly. It is undoubtedly true that of recent years there has been a line of division between banking and pawnbroking; but it has not always been so, and history is full of instances in which great bankers have loaned large sums of money upon the pledge of rare and valuable jewels. I can see no reason therefore why defendant, who is conceded to have acted in good faith, should be denied the equal protection of the factor's act, merely because he pursues the perfectly lawful business of a pawnbroker. To test the applicability of the factor's act by the nature of the business carried on by the lender is to introduce an innovation which is not to be found in the language of the act itself, and which finds support in no reported case to which our attention has been called.

The kind of business commonly carried on by the lender might under some circumstances have a bearing upon the good faith of the transaction, but can have no such application in the present case because the good faith of defendant was conceded. The authority given to Weber was not a restricted one in the sense in which that term is used in the cases cited by the respondent. In those the restriction was as to persons to whom the sale was to be made, and thus conferred only a very limited agency. Here the agency, so far as concerns a sale, was unrestricted; the only limitation being as to the price—a very common limitation in cases of sale by agents or factors.

In my opinion the judgment should be reversed, and a new trial granted.