DEFERRED PAYMENT PLAN, INC., Appellant, *v.* MINER BENNETT, Doing Business as ECONOMY MOTORS, Respondent.

Third Department, April 29, 1942.

*Hancock, Dorr, Ryan & Shove* [*Theodore Hancock* and *Charles H. Bassett* of counsel], for the appellant.

*Richard C. Llop*, for the respondent.

HILL, P. J. The appellant brought this action to replevy three automobiles, a Ford, a Buick and a Hupmobile. The cause was tried before the court without a jury, resulting in a judgment dismissing the complaint and awarding the cars to the respondent, who was a dealer in used cars in the city of Ithaca, trading under the name of Economy Motors. The claim of the appellant was founded upon chattel mortgages given to it by a used car dealer, Sparrowk, also doing business in Ithaca under the name of Ithaca Used Car Exchange. At times, respondent placed automobiles temporarily in the possession of Sparrowk who exhibited them in his garage or upon his lot, with authority to sell for cash at a price fixed by respondent. Cash sales were rare, as ordinarily there was an exchange of cars with boot money paid. Under those conditions, Sparrowk had no authority until obtained specifically from respondent. Sparrowk received a commission for his services.

The chattel mortgage first given was upon the Ford car which had been obtained by the respondent in a trade negotiated by Sparrowk who at once delivered possession to the respondent, but falsely represented that the certificate of title had not been turned over to him. Later he told respondent that he had a prospective customer for the car, and it was delivered to him for demonstration. The representation as to the prospective customer was false, and Sparrowk obtained the car with the intention to, and did, drive it from Ithaca to Syracuse, exhibiting it and the certificate of title to appellant's agent, representing that he was the owner. A loan of $325 was negotiated, secured by a chattel mortgage executed by Sparrowk. At a later date the respondent became owner of the Hupmobile and the Buick through trades negotiated by Sparrowk, who obtained certificates of transfer in blank. The signature of a notary was later placed thereon illegally. These cars were stored upon Sparrowk's lot, and he represented himself to appellant's officials as the owner, and executed the mortgage for $95 on the Hupmobile and $200 on the Buick. The mortgage, which permitted the cars to be exhibited and sold, after obtaining a release, was executed in Syracuse, the cars being in Ithaca.

The evidence sustains the inference that Sparrowk obtained possession of each of these automobiles and the certificates of ownership with the preconceived intention of fraudulently negotiating mortgages. There is no other reasonable inference as to the Ford, which was involved in the first transaction. The trial court found that Sparrowk's possession of the Hupmobile and Buick was temporary and for a limited purpose. The inference as to larceny is sustained by a criminal act in connection with notarizing the certificates of transfer. These were received at the time he took possesion of the automobiles. Concealment as to the Ford certificate when he delivered that car to respondent, and the criminality as to the others, indicate his larcenous intention from the beginning. As bearing upon the equities, there was proof, and the trial court found, that appellant's president had been informed that Sparrowk had cars belonging to respondent on exhibition at his lot and garage, and was required to make inquiry as to the claimed ownership.

" It is the universal rule that an owner, by the mere delivery of possession of chattels to another, is not thereby precluded from claiming title thereto. [Citations.] Neither is it sufficient, to work an estoppel, that the person to whose possession the owner intrusts chattels is a dealer in similar merchandise. [Citations.] " ( *Utica Trust & Deposit Co.* v. *Decker*, 244 N. Y. 340.) Sparrowk obtained possession of these cars and the evidence of title with the preconceived idea of fraudulently executing mortgages and converting the proceeds to his own use. He having obtained possession with criminal intent, the Factors' Act (Pers. Prop. Law, § 43) does not apply. Had he conceived the criminal intent after he obtained possession, the act would apply. " The test seems to be whether at the time of obtaining possession, such possession was obtained with the preconceived intention of committing the crime of common law larceny by trick and device. If so, the Factors' Act does not apply. If, however, the intent was conceived after obtaining possession, then the act applies. For over a hundred years that has been the law in this State." ( *Sweet & Co.* v. *Provident Loan Society*, 279 N. Y. 540, 544.)

The judgment should be affirmed, with costs.

CRAPSER, BLISS, SCHENCK and FOSTER, JJ., concur.

Judgment affirmed, with costs.