EDMOND FRISCH, Respondent, *v.* LEAH PERLE et al., as Copartners under the Name of METROPOLITAN LOAN Co., Appellants, Impleaded with Others.

Third Department, December 29, 1942.

*Nathan H. Richman* and *Joseph J. Casey* for appellants.

*Ellis J. Staley* and *Ellis J. Staley, Jr.,* for respondent.

HILL, P. J. The defendants Perle, doing business under the name Metropolitan Loan Company, appeal from a judgment awarding to the plaintiff possesssion of a valuable piece of jewelry called a clip, upon which they had advanced $2,500 to the defendant Lion.

The jury determined that Lion obtained the clip from the plaintiff-respondent's agent Pratt, on July 31, 1941, by trick, fraud or device "with intent to appropriate it to his own use." The appellants contend that Lion's possession was that of a factor and that under the Factors' Act (Personal Property Law, § 43; Cons. Laws, ch. 41) the pledge by him transferred title.

The law concerning transactions of this character is settled. (*Sweet & Co.* v. *Provident Loan Society*, 279 N. Y. 540; *Stone,*

*Inc.* v. *Provident Loan Society,* 260 N. Y. 536; *Schmidt* v. *Simpson,* 204 N. Y. 434; revg. 139 App. Div. 509; *Freudenheim* v. *Gutter,* 201 N. Y. 94; *People* v. *Miller,* 169 N. Y. 339; *Deferred Payment Plan, Inc.,* v. *Bennett,* 263 App. Div. 694.) Lion's possession was that of a thief through trick and device, and the Factors' Act had no application if, when he received the clip or prior thereto, he had the preconceived idea of selling or pawning it and converting the proceeds to his own use, and respondent, the owner, may recover his property even from a purchaser for value. Upon the other hand, if the felonious plan to pawn the article and misappropriate the amount advanced was conceived by Lion after he received the clip, the Factors' Act does apply, and a purchaser or pledgee would be entitled to its protection.

The jury found that the intent was preconceived. The record is to be examined to learn if the finding is against the weight of evidence. Lion was brought from prison to testify on behalf of appellants. His conviction followed another later, but similar, jewelry transaction. During 1941 until August first, he resided with his wife and a son at a hotel in New York city. He described his occupation, " I had been occupied in Wall Street for twenty-five years. * * * Well, I have been a broker and I published a financial paper. I disseminated information over the radio through the McMann Institute of Financial Research." He stated that business was bad in Wall street and in the summer of 1941 he attempted to sell jewelry which he obtained from Strauss & Sons, but was unable to make a sale and returned the items. The record does not disclose that he ever sold a piece of jewelry which he had in his possession. In the latter part of July, he had a conversation with a Mr. Pratt who represented respondent; " I told Mr. Pratt that I thought I would be able to sell some jewelry as I had a very large acquaintance and I would be glad if he would give me the opportunity to try it, and we agreed on terms — any sales that I might make of fifty per-cent over the price of the jewelry that was concerned — and I told him I wanted to go to Saratoga as a good many of my acquaintances were going to be there, and he arranged to deliver to me some jewelry for me to go to Saratoga with." On July 31 he received a diamond ring (later returned to Pratt) and a clip which was embellished by a very large and valuable emerald and smaller diamonds. It was valued at $10,000 and Lion was to receive half of any amount over that sum for which it was sold. He signed a memorandum showing the agreed value of the property and further stating: " The goods described are valued

as below are delivered to you for examination and inspection only and are the property of Frank S. Pratt, and subject to his order and shall be returned to him on demand. Such merchandise until returned to him and actually received are at your risk from all hazards. No right or power is given to you to sell, pledge, hypothecate or otherwise dispose of this merchandise regardless of prior transactions. A sale of this merchandise can only be effected and title will pass only if as and when the said Frank S. Pratt shall agree to such sale and a bill of sale rendered therefore (sic)." It was agreed that when Lion arrived in Saratoga he should telegraph Pratt the name of his hotel. This he did on August 2, and three days later, the same day he received word from Pratt to return the diamond ring, he went to appellants' pawnshop in Albany and pledged the clip for $2,500. Within a few days he sold the pawn ticket to the defendant Cramer for $1,000. He said that he attempted to sell the clip to several persons and that a friend also exhibited it to prospective purchasers. He mentioned showing it to the trainers for two well-known horse owners and a man whom he described as " a very successful, big bookmaker." The day he pawned the clip he returned to Saratoga in time for the races. He said that he attended the races every day during his sojourn there. Before the end of the month he was arrested.

It may have significance that Lion obtained this valuable property just in advance of the opening of the season at Saratoga, where many thousands of dollars are wagered each day upon the result of the races; and on Tuesday following his arrival on Saturday, he pawned the clip.

He had been in Wall street for many years where the ownership of large sums of money change daily on the hazard of successfully anticipating the course of the prices at which stocks would sell. He was skilled in a business which, if not to be classified as gambling, in many instances to the uninitiated seems to resemble it. His testimony shows a close acquaintance with persons at the track generally supposed to have advance information as to the probable winners. His daily attendance at the track, the chronology of events and other indicia justified the jury in finding that being in poor financial condition and without occupation, he obtained this jewelry which he knew could be pawned readily, to supply him with funds to carry on what he hoped would be a successful venture at the tracks.

CRAPSER, BLISS, SCHENCK and FOSTER, JJ., concur.

Judgment affirmed, with costs.