Rapallo, J.
 

 Three distinct grounds of liability on the part of the defendants were submitted to the consideration of the jury. 1st. That of a copartnership resulting from the purposes for which the cotton was purchased. 2d. That
 
 of
 
 express authority to Blanchard from his co-owners to obtain the advances. 3d. That of a subsequent ratification by the defendants of the acts of Blanchard. The verdict being general, it is impossible to determine upon which of these three grounds the jury based their verdict, and consequently if it shall be found that either of them was improperly sub
 
 *206
 
 mitted to the jury, the judgment cannot be sustained, unless it shall also appear that some one of them was so clearly established by uncontroverted evidence, as to have rendered it the duty of the court to direct a verdict for the plaintiffs.
 

 The arrangement under which the cotton was purchased by Blanchard, as described by the concurrent testimony of all the witnesses who spoke upon the subject, established . only an ownership in common of the cotton. They all state that there was no agreement as to the sale or disposition of the property, but that that subject was left for future consideration. To constitute a partnership there must be a reciprocal agreement of the parties not only to unite their stock, but to share in the risks of profit or loss by the disposition to be made of it. Where several parties agree to purchase personal property in the name of one of them, and to take aliquot shares of the purchase without agreeing to resell jointly, there is no partnership.
 
 (Hoara
 
 v.
 
 Dawes,
 
 1 Doug., 371;
 
 Coope
 
 v.
 
 Eyre,
 
 1 H. Bl.,
 
 37; Holmes
 
 v.
 
 United Ins. Co.,
 
 2 John. Cases, 331;
 
 Post
 
 v.
 
 Kimberly,
 
 9 John. R., 491.)
 

 This proposition was correctly charged by the judge at the trial. But he added, that if the jury on the whole evidence should come to the conclusion, that although the disposition of the property
 
 was not previously
 
 a/rramged, yet the conduct of the parties, and what was subsequently done by them with each other, and by either of them with the knowledge of the others with third parties, satisfied the jury that it was the
 
 original Intention of the parties to home the cotton disposed of by a sale
 
 and divide the profits, then they would be partners.
 

 He further charged, that it was for the jury to say whether there was enough evidence in the case to satisfy them that such was their
 
 original intention.
 
 Exception was duly taken to each of these propositions.
 

 This charge clearly conveyed to the jury the idea that the undeclared intentions of the several parties finally to unite with each other in the disposition of the property, would be sufficient to constitute them partners. There was no evi
 
 *207
 
 dence whatever upon which the jury could have found any mutual consent of the parties to such an arrangement. The fact of any arrangement originally, as to the disposition of the property, was disproved by all of the witnesses, and it clearly appeared that the question of shipment and sale did not arise until long after the purchase.
 
 It
 
 would have been erroneous therefore, to have instructed the jury that from the subsequent acts of the parties, they might find that the joint disposition had been originally agreed upon. But the judge did not so charge. The charge expressly assumed that the jury should find that no agreement or arrangement on the subject of a disposition of the cotton was made, and it directed the attention of the jury to the
 
 intentions
 
 of the parties as contra distinguished from their agreement. The fact of a subsequent assent by South worth & Prouty to the shipment of the cotton, though asserted by Blanchard, was denied by them, and was one of the main issues in the case. The question submitted by the judge to the jury did not require for its solution a determination of that disputed question of fact. Each of the defendants had testified upon his cross-examination, that he had bought the cotton with the intention of reselling it, and that he had never formed or expressed the intention of separating his share from those of the others. Prouty had testified that he intended from the first that the cotton should he sold, though he had not consented that others should sell his share without his knowledge. That they were to finish the cotton, and then look out for a market, but further consultation was to be had before determining upon what disposition should be made of it.
 

 Southworth testified to a similar effect. He concedes the right of each to have taken his share of the cotton when ready for market, if no agreement for a joint sale were made.
 

 Hnder this state of facts the jury may, without adopting the statements of Blanchard in respect to the consent to the shipment, have been satisfied that the parties intended, from the beginning, to make an arrangement with each other for a
 
 *208
 
 .joint disposition of the property and -a division of the profits; and the effect -of the charge was to instruct them, that if it was their original intention that such should be the final result, they were partners, although no agreement or arrangement for such disposition had been made between them.
 

 This, -toe think, was erroneous. Though goods be bought by several, under an agreement to hold in aliquot shares, but with the intention of subsequently forming a copartnership in respect to them, yet, 'until the partnership agreement is actually made, the purchasers are not copartners, but only tenants in common. There is still a
 
 “ locus perdientice”
 
 The partnership may never be formed. Either party may withdraw before the agreement is consummated. Neither of them, before that time, has power to bind the other by his contracts.
 

 The learned counsel for the respondents endeavored to sustain this portion of the charge as referring, not to the original intention of the parties at the time of making the purchase, but to the intention existing at the time of the advance of the plaintiffs, and. as an instruction that if, at that time, the parties had, as testified to by Blanchard, agreed to a shipment and sale of the cotton, the partnership contract had become complete. But the charge was not so
 
 restricted;
 
 and it is the want of such restriction that rendered it 'objectionable and prejudicial to the' defendants. If the jury had been instructed that, although they should find 'that no agreement was originally made for a joint ■ disposition of 'the property, yet that, if they should find that before the advance had been obtained, such an agreement was made, there was a "partnership, they could not have found for the plaintiffs on that branch of the case, without giving credit to the statements of Blanchard, and rejecting those of Southworth and "Prouty. But, by the charge that the original intention of the parties, without any agreement dr arrangement between them, was sufficient to constitute a partnership, the jury were enabled to find a verdict for the plaintiffs, "even though they should deem the evi- ■ dence of the defendants entitled to the greater credit.
 

 The question of an express authority to Blanchard to make
 
 *209
 
 the shipment and obtain the advances was separately submitted to the jury. The testimony of Blanchard was sufficient to authorize the submission of that question, including the question of the authority of Southworth to consent on behalf of Burrows. But Blanchard’s testimony on both of these points was contradicted, and we cannot say that the jury necessarily passed upon them, as they may have rested their verdict upon a finding of a copartnership
 
 ab wiitio,
 
 under the instructions of the court.
 

 It follows that the error in these instructions is fatal to the judgment, unless a ratification was so clearly made out as to leave nothing for the consideration of the jury, and to have rendered it the duty of the judge to direct a verdict for the plaintiffs on that ground.
 

 To test this question, we must look at the testimony of the defendants; for if, according to their version of the transaction, viewed in the most favorable light in which the jury might properly have regarded it, there was not a sufficient ratification to bind the defendants in
 
 sólido
 
 for the whole amount advanced by the plaintiffs, the court would not have been justified in directing the verdict which was rendered.
 

 The defendants, Prouty and Southworth, admit that on the 24th of April, 1866, they received from Blanchard, South-worth $1,000 and Prouty $3,000, and that Blanchard informed them at the time that he had obtained $15,000 from the plaintiffs, as an advance upon the shipment through them of a portion of the cotton. But they aver, in substance, that when Blanchard offered them his checks and informed them of what he had done, they denied his authority to ship, or to obtain the advances, and refused to receive the checks, but that they were finally induced to accept them, by Blanchard’s assurance that he had obtained the $15,000 advance upon the sole credit of Blanchard & Oo., and in such a manner- as not to render the other defendants responsible to the parties making the advance, in case of a reclamation; that the advance was a transaction between the plaintiffs and Blanchard
 
 &
 
 Co.; that the defendants had nothing to do with the plain
 
 *210
 
 tiffs, and that the payment was a matter between Blanchard & Co. and the defendants; also that Blanchard did not disclose that he had obtained more than $15,000, or that he contemplated obtaining any further advances. That, relying upon these statements of Blanchard, they received the money, Southworth at the same time receiving $3,000 for account of the defendant, Burrows, who was absent; that this latter sum was deposited by Southworth to the credit of a bank with which Burrows was connected, and Burrows advised of the deposit. Burrows testifies that he was informed that this deposit proceeded in some way from the cotton transaction, but how he did not know; that the only authority he had given to Southworth was to look after or watch his interest in the cotton.
 

 All these parties testify that they did not learn the actual facts until long after the cotton delivered to the plaintiff had been shipped to England, and the residue destroyed by fire.
 

 It appears that at the time of the payment by Blanchard, April twenty-fourth, $22,000 had, in fact, been advanced by the plaintiffs, and that on the following day they made a further advance to Blanchard & Co. of $6,000, which latter sum is included in the recovery.
 

 As to this latter sum, there clearly was no ratification; nor was it advanced on the strength of the acceptance by Prouty, Southworth and Burrows of the sums paid to them on the twenty-fourth, for it does not appear that the fact of such payments was communicated to the plaintiffs before the advance of the $6,000. From the beginning, the plaintiffs seem to have relied wholly upon the statements of Blanchard as to express authority from his co-owners, and not upon any act of the defendants. The plaintiffs were informed by Blanchard of the separate interests of the defendants, and do not even seem to have supposed that they were dealing with them on the footing of a partnership ; for in January, 1861, they wrote to Southworth, that they had charged him with one-fifteenth of the loss on the cotton, and demanded of him that proportion only. They trusted Blanchard’s representa
 
 *211
 
 tions at their peril, making no inquiry of Prouty or South-worth, though they both resided in the same city with the plaintiffs; and it does not appear that either they or Burrows had done anything to hold Blanchard out as authorized to contract in their names. This is a case, therefore, which depends upon the actual authority given, or upon the ratifi-,, cation of specific acts; and although such ratification is, as to the act specifically ratified, equivalent to a previous authority, it is not retroactive to the extent of binding the principal for other acts in excess of the authority of the agent, though the principal might have been bound for such other unauthorized acts, if they had been done under color of a previous authority actually given. The ratification, therefore, if it had been made out of the borrowing of the $22,000, not having been communicated to the lender, and they not having acted on the faith of it, would not carry with it the subsequent advance of $6,000.
 
 (St. John
 
 v.
 
 Redmond,
 
 9 Porter Ala. It., 428), though it might be that if there had been a previous authority to borrow the $22,000, it would have bound the defendants for the subsequent advance, if the precise limit of the agent’s authority had not been known to the lender.
 

 But was there a clear case on the uncontroverted facts of a ratification of the act of Blanchard, in obtaining the advance of the $22,000 or any part of it on the joint credit of all the owners of the cotton? Assuming the transaction to have been as stated in the testimony of Prouty, Southworth and Burrows, Blanchard
 
 &
 
 Co. wore mere bailees of the cotton for the specific purpose of picking and drying it and preparing it for sale, for a compensation to be paid to them by the owners. The unauthorized pledge and shipment of it by Blanchard were, as to the shares of his co-owners, a conversion, which rendered him liable to them for the value of their respective shares. By receiving from him a portion of the advances which he had obtained, on his assurance that he had obtained them on the credit of Blanchard & Co., and in ignorance that their own credit had been used, they did not ratify his use of their names. There can be no ratification of
 
 *212
 
 an act without knowledge of the act having been done. The ratification of an act previously unauthorized must, in order to be binding, be made with a full knowledge of all the material facts.
 
 (Owings
 
 v.
 
 Hull,
 
 9 Pet., 608;
 
 Nixon
 
 v.
 
 Palmer,
 
 8 N. Y., 398;
 
 Seymour
 
 v.
 
 Wyckoff,
 
 6 Seld., 221;
 
 Smith
 
 v.
 
 Tracy,
 
 36 N. Y., 79, 83;
 
 2
 
 Greenlf. Ev., § 66; Story on Agency, §§ 239, 253.) The receipt even from an agent, of money paid him on a contract, does not bind the principal to the contract, unless he knows on what account the money was received and the terms of the contract.
 
 (Penn. Co.
 
 v.
 
 Dandridge, 8
 
 Gill
 
 &
 
 J., 323.)
 

 It cannot be contended, therefore, that so long as the defendants remained ignorant that the advances had been made upon their credit, there was any ratification ; but it is claimed that by not offering, when they became apprised of the facts, to return to the plaintiffs the sums which they had received of Blanchard, they ratified the original transaction and became liable in
 
 solido
 
 as principals for all the advances obtained from Blanchard
 
 &
 
 Go. But that result does not follow. In the first place, the defendants testify that they did not learn the facts until long after the cotton' had been sent to England. It was then too late to restore matters to their original condition. Furthermore, according to their statement, they had not received the money as their own, oías arising from a dealing between them and the plaintiffs through Blanchard as their agent, but as the money of Blanchard, in receiving which they dealt with him as a principal. He had misappropriated their property, and they were entitled to payment or indemnity from him. Had they known all the facts at the time, they could rightfully have repudiated his acts, and demanded and received from him the value of their shares. They were not bound to look to the plaintiffs for their cotton. They could have prosecuted Blanchard, or ¡ settled with him, without incurring any liability to the plaintiffs. And even if they had severally received of Blanchard payment or security out of the same money which they knew he had obtained from the plaintiffs by the fraudulent
 
 *213
 
 use of their names, and that money could be identified and followed, the receipt of it by them as his money, to indemnify them for his tortious disposition of their property, would not have been a ratification of the contract which he had assumed to make in their behalf, nor would it have rendered them jointly liable for the whole amount of the advance, including what Blanchard retained. They would, at the most, have been liable for what they received. The mere fact that the proceeds of a contract made by one person in the name of another without authority, or a portion of them have come to the hands of the latter, is not, of itself, sufficient to render him liable on the contract.
 
 (Penn. Co.
 
 v.
 
 Dundridge,
 
 8 Gill. & Johns. [Md.], 323;
 
 Evans
 
 v.
 
 Wells,
 
 22 Wend., 324;
 
 Palmerton
 
 v.
 
 Huxford,
 
 4 Den., 166-168.) To have that effect, the proceeds must be received not only with knowledge, but under such circumstances as to constitute a voluntary adoption of the contract. When goods are purchased by one assuming, without authority, to be the agent of another, if the latter knowingly receives the goods so purchased
 
 as his own property,
 
 this will amount to a ratification of the agency. But if he denies the authority of the pretended agent to act for him on having knowledge of his acts, and afterward receives the goods as the property of the assumed agent in payment,,of a debt due from him, it will not amount to a ratification.
 
 (Hastings
 
 v.
 
 Bangor House Proprietors,
 
 18 Maine, 436.) It is conceded in that case, that the seller of the goods would have a remedy against the party who received them, knowing that they had been obtained by fraud. But the remedy would not have been upon the original contract of purchase. Beeeiving them as the property of the fraudulent vendee, is inconsistent with an adoption of his assumed agency. And if only a portion of the goods were received, the recipient would only he hable for that portion.
 

 Clearly, if the defendants received part of the proceeds innocently, as the money of Blanchard, their subsequent omission to return what they had received could not make them
 
 *214
 
 liable upon the original contract; and if they restored the money, they were entitled to recover back their property or its proceeds.
 

 The plaintiffs parted with their money, relying wholly on Blanchard’s representations as to his authority. The subsequent receipt from him by the defendants of part of the money, tended in no way to accredit him or to mislead the plaintiffs, and raises no equity in their favor, upon which the defendants can be held as joint contractors. It is true that frauds might be committed by putting forward an insolvent party, and obtaining advances through him, and subsequently denying his authority. But there must be some evidence of such fraud to create a liability.
 

 The counsel for the plaintiffs has referred to a class of cases in which it is said that a principal cannot enjoy and retain the fruits or benefits of the act of his agent, without adopting and ratifying the instrumentalities by which those fruits were obtained, even though employed without his authority or knowledge; and also to cases establishing, that if the principal ratifies and enjoys the benefit of part of a contract, he cannot repudiate the rest. The first class of cases referred to are all cases of acknowledged agency, or of acts expressly adopted by the principal as done for him, and where the principal is either seeking to enforce a right obtained for him by his agent, or has had the benefit of a contract which he authorized or has adopted as his own; and the controversy has been, not as to the authority of the agent to make the contract, but as to the means employed by him to accomplish what he was authorized to do, or what the principal has accepted as done for him; and the instrumentalities referred to are, in general, frauds committed by the agent in doing the authorized or ratified act.
 

 When the principal seeks to enforce a contract or right obtained for him by his agent, or by one whose agency he has adopted, it is well established that the fraud of the agent may be set up as a defence against his innocent principal, for the very obvious reason that the contract or other right which the
 
 *215
 
 principal is seeking to enforce is tainted and vitiated by the fraud employed by his agent in obtaining it; and the principal, though himself innocent, takes it subject to that taint.
 
 (Attwood
 
 v.
 
 Small,
 
 6 Clark
 
 &
 
 Fin., 449; Story on Agency, §419; Dunlap’s Paley, 4th Am. ed., 325;
 
 Veazie
 
 v.
 
 Williams,
 
 8 How. U. S., 134;
 
 Dexter
 
 v.
 
 Adams,
 
 2 Denio, 646.)
 

 The other cases which hold the principal liable to respond for the frauds of his agent, rest upon the familiar doctrine that the principal is bound for the acts of the agent done in the course of his employment, and even for his frauds and other torts, when committed in doing what he was intrusted to do
 
 (Hern
 
 v.
 
 Nichols,
 
 1 Salk., 289; Story on Agency, §§ 452-454); and also upon the ground that a principal, by adopting a contract made for him, and receiving and retaining the fruits as belonging to him by virtue of that contract, assumes responsibility for the instrumentalities which the agent may have employed in his behalf to effect the contract.
 
 (Veazie
 
 v.
 
 Williams,
 
 8 How. U. S., 134;
 
 Bennet
 
 v.
 
 Judson,
 
 21 N. Y., 238;
 
 Elwell
 
 v.
 
 Chamberlain, 31
 
 id.,
 
 611.)
 

 It must be observed, however, that even this responsibility for instrumentalities does not extend to collateral contracts made by the agent in excess of his actual or ostensible authority, and not known to the principal at the time of receiving the proceeds, though such collateral contract may have been the means by which the agent was enabled to effect the authorized contract, and the principal retain the proceeds thereof after knowledge of the fact.
 
 (Smith
 
 v.
 
 Tracy,
 
 36 N. Y., 79; and see
 
 Hammond
 
 v.
 
 Michigan State Bank,
 
 Walker’s Ch. R, 214;
 
 Young
 
 v.
 
 White,
 
 7 Beav., 506.) A party dealing with an agent is bound to inquire as to the extent of his authority; but he cannot always protect himself against his frauds.
 

 The cases in which it is held that, if the principal ratifies and enjoys the benefit of part of a contract, he cannot repudiate the rest, refer to an intentional ratification with knowledge of all that has been done. (Story on Agency, § 250;
 
 Farmers' Loam and Trust Co.
 
 v.
 
 Walworth,
 
 1 N. Y., 434;
 
 *216
 

 Smith
 
 v.
 
 Tracy,
 
 36 N. Y., 79; Dunlap’s Paley, 172, 173.)
 

 But this case does not come within the principle of any of those cited. Here, according to the defendant’s version of the facts, the acts of Blanchard were not done as the means of accomplishing anything which he was authorized by the defendants to perform as their agent, nor were the sums paid received by them as the fruits of any contract made in their behalf, and which they adopted, but upon an independent dealing between them and Blanchard, and as his money raised on his own credit and their goods.
 

 The judgment cannot be sustained, on the ground that the evidence justified the direction of a verdict for the plaintiffs; and it must, therefore, be reversed, and a new trial ordered, with costs to abide the event.
 

 All concur, except Allen, J., who did not hear argument, not voting.
 

 ■ Judgment reversed.