## SHEEHAN *v.* FLEETHAM *et al.*

*(Supreme Court, General Term, Third Department.* November 26, 1890.)

PARTNERSHIP—WHAT CONSTITUTES—EVIDENCE.

In an action against two as partners for goods sold and delivered, evidence that the person in whose name the business was conducted executed a bill of sale of his half interest in the stock to the other defendant, reciting in the instrument that he was only half owner, that this other defendant admitted to two witnesses that he had previously been a half owner, and that after the bill of sale he was whole owner, and that the two were brothers-in-law, and were partners in another business, is sufficient to carry the question of partnership to the jury. MAYHAM, J., dissents.

Appeal from circuit court, St. Lawrence county.

This action was brought by John H. Sheehan and Philip Sweeney as partners, to recover the amount of an account alleged in the complaint to be due from the defendants as copartners. The defendant Hutchins failed to answer, and the defendant Fleetham answered denying the existence of any copartnership with Hutchins, and Hutchins had no right or authority to bind him as such, or to create any liability on his part to the plaintiff. Pending the action, Sweeney, one of the plaintiffs, died, and the action was prosecuted by Sheehan, as survivor. The case discloses that in 1886 the defendant Hutchins, in partnership with one Aldrich, opened a drug-store, and continued the business until June, 1888, when Aldrich sold out his interest, taking Hutchins' note for the same, and soon thereafter the defendant Fleetham gave his check to take up the note. The case does not disclose who negotiated the purchase of Aldrich's interest, nor to whom it was transferred, except as the same may be inferred from the fact that Hutchins gave his note, which was however paid by Fleetham by his check. After the purchase of Aldrich's interest, Hutchins continued the business in his own name. On the 27th of October, 1888, Hutchins informed defendant Fleetham, who was his brother-in-law, that he was about to be sued, and proposed to turn his interest in the drug-store over to Fleetham to protect the creditors of the store, and on that day a "bill of sale" was executed by Hutchins to Fleetham of all the right, title, and interest of Hutchins in the store, goods, furniture, fixtures, accounts, and interest of Hutchins in the drug business, in which property he asserts in said bill that he is the one-half owner. The consideration expressed was $1,800, the receipt of which was acknowledged by the assuming and payment of Hutchins' one-half indebtedness for drugs, goods, and all property connected with the drug business carried on by vendor in Canton. The case does not show that this paper was personally delivered to Fleetham, but the same seems to have been brought to his knowledge by Hutchins. On the 28th of February, 1889, the defendant Fleetham executed a "bill of sale" of the property mentioned in the bill of sale to him, and upon a like consideration, to Helen Hutchins, wife of defendant Hutchins, which was filed in the St. Lawrence county clerk's office on the 13th day of March, 1889. This "bill of sale" was never delivered personally to the vendee named in it, but was executed by Fleetham, and filed by him without the knowledge either of Hutchins or his wife. There is a sharp conflict in the evidence as to whether or not Fleetham ever treated Hutchins as a partner, or in any manner recognized the existence of that relation with him. The plaintiff gave evidence tending to establish that relation, and defendant Fleetham positively denied the existence of that relation in his testimony, and gave evidence that Hutchins, after the dissolution of the partnership with Aldrich, conducted all the business in his own name, and that plaintiff charged the account in suit to him solely. At the conclusion of the evidence, the defendant moved for a dismissal of the complaint. The plaintiff at the same time asked the court to direct a verdict for the amount of the plaintiff's claim. The trial judge held and decided that the plaintiff was not entitled

to recover, and directed a verdict for the defendant. The plaintiff thereupon asked the court to submit to the jury or find that the plaintiff relied upon the statement made in the "bill of sale." "Also asked the court to submit to the jury the proposition that the fact that Hutchins made this bill of sale to Fleetham, who permitted the business to go on in Hutchins' name, Fleetham having knowledge of the fact, rendered him liable to any person who sold goods to Hutchins, knowing that he was a half owner. Also to send to the jury the question whether the parties were actual partners. Also requested the court to give the jury the question that the parties, being engaged in committing a fraud, were liable to persons injured thereby." Each of the plaintiff's requests were refused by the court, and the plaintiff appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Nelson L. Robinson,* for appellant. *George C. Sawyer,* for respondent.

LEARNED, P. J. This is an action for goods sold and delivered. The learned trial justice directed a verdict for defendants, and plaintiff appeals. Hutchins, one of the defendants, had carried on a drug business. He also had a half interest in the furniture business carried on by defendant Fleetham, brother of Hutchins' wife. On the 27th of October, 1888, Hutchins, being in danger of a suit, executed to Fleetham an assignment of all the drugs, fixtures, furniture, and accounts, etc., "of which said property I am the one-half owner." The assignment was in consideration of Fleetham's assuming and paying off "my one-half indebtedness for drugs, goods, and all property connected with the drug business, * * * of which I am the half owner." The business continued in the same name. On the 13th of March, 1889, Fleetham executed an assignment to Hutchins' wife. This recited the assuming and paying "off my one-half indebtedness for drugs, goods, and all property connected with the drug business," etc., " of which I am one-half owner," and conveyed to Mrs. Hutchins all of Fleetham's right in the drugs, etc., and amounts "of which I am one-half owner." The plaintiff's firm from June 2, 1888, to March 8, 1889, sold goods for this drug-store amounting to $644.84. There was paid to them October 3, 1888, $120; February 5, 1889, $100. About the 1st of November they learned through a commercial agency of the sale by Hutchins & Fleetham. In reliance on that information they made the subsequent sales. Their account was still kept in the name of Hutchins. About April 16, 1888, plaintiff saw Fleetham, and asked him if he was a half owner of Hutchins' drug-store, and he said he was. Mr. Bookstaver, a witness, testified that about that time he saw Fleetham, and asked him if he was not a partner in the Hutchins concern. He replied that he was a half owner; had been a half owner from June previous till October, (as the witness thought;) then, that he bought out the other half, and owned the whole; that he had sold out the business, or was about to sell out the business that day. Being asked why he was not going to pay the claim represented by Mr. Bookstaver, he said that, while he was a partner, he was not liable, because he had not ordered Hutchins to buy these particular goods, and had not ordered them himself. The witness says that Fleetham told him distinctly that he was a partner from June previous till a certain period, (the witness thought, October;) then, that he purchased the balance, and became sole owner. Mr. Kenyon testifies to the same effect. Thus we have the testimony of these witnesses that Fleetham admitted that he was a partner in the business from June, 1888, and that in October (as the witness thinks) he bought out the balance, and became the sole owner. With these statements the assignment from Hutchins harmonizes, inasmuch as Hutchins calls himself the "half owner," and speaks of Fleetham's securing and paying Hutchins' "one-half indebtedness." Who was the other half owner, and whose the other half indebtedness? It is true that Fleetham denies that he said what these three witnesses state; but that made a question

for the jury. It is undoubted that, from October 27th, Fleetham was either half owner or whole owner of the business and property, including the accounts and account-book. Of course it is possible for two persons to be joint owners of property, and yet not partners. But when one carrying on a business of buying and selling assigns half of the property, including accounts, to another, and goes on with the buying and selling as before, with the knowledge of the assignee, there is quite strong evidence from which the jury may infer that the assignee consents to share in the business as a partner; still more, if the assignee himself had previously been a half owner of the business. It is not necessary to decide whether or not the learned justice should have directed a verdict for the plaintiff. There was certainly evidence to go to the jury on the question of partnership. The judgment should be reversed, and a new trial granted, costs to abide the event.

MAYHAM, J., (*dissenting.*) The evidence in this case did not establish a partnership in fact between the defendant Fleetham and Hutchins. To constitute such relations there must be a reciprocal agreement between the parties, not only to unite their stock, but to share in the risks of profit or loss upon the disposition thereof. *Baldwin* v. *Burrows*, 47 N. Y. 206. The most that can be claimed from the evidence in this case is that Fleetham, if he accepted the bill of sale of October 27, 1888, became one-half owner of the stock at that time in the store, and of the accounts, and assumed the payment of one-half of the debts then existing, which he subsequently on the 28th of February, 1889, transferred to Hutchins' wife. If by the first bill of sale the title vested in him of one-half of this stock, he, under this agreement, became but a tenant in common of the property, and not a partner in the business, and that would be so until a partnership in fact was formed, even if, at the time of the purchase, the parties intended at some future time to form a partnership. Until that was done, they would continue to hold in severalty. In *Baldwin* v. *Burrows*, *supra*, the court says: "Though goods be bought by several, under an agreement to hold in all equal shares, but with the intention of subsequently forming a copartnership in respect to them, yet until the partnership agreement is actually made, the purchasers are not copartners, but only 'tenants in common.' There is still a *locus penitentiæ*. The partnership may never be formed. Either party may withdraw before the arrangement is consummated. Neither of them before that time has power to bind the other by his contracts." Applying this rule to the case at bar, we do not see how the defendant Fleetham can be bound by the contract of Hutchins, made in his own name with the plaintiff, who charged the goods to him, upon the assumption that Fleetham's purchase of half of the stock made him a partner, in fact, with Hutchins. The plaintiff claims to have been led to the belief of the formation of a partnership between Fleetham and Hutchins by the report of the bill of sale by R. C. Dun & Co., commercial agency, to the plaintiff. We need not say that such a report could not bind Fleetham as a partner, when that relation did not exist in fact. That proposition is self-evident. If, therefore, the evidence was insufficient to establish the existence of the relation of partners in fact between the defendant Fleetham and Hutchins, the court committed no error in withholding that question from the jury, as the court would have been bound to set aside the verdict if found against the evidence or unsupported by it. *Herring* v. *Hoppock*, 15 N. Y. 409, 415.

But the plaintiff insists that, even assuming that Hutchins and Fleetham were not partners in fact, still the court should have submitted to the jury the question whether the defendant Fleetham had not so held himself out to the world, and to this plaintiff, having given credit to Hutchins upon the faith of the existence of that relation, founded upon the acts of Fleetham, that he is now, as to the plaintiff, estopped from denying the existence of that

relation. It is quite true that when an individual, though not a member of a firm, holds himself out to another as such, so that the plaintiff had reason to believe, and did believe, he was a member, and on the faith of his representation trusted the firm, he will be estopped from denying that he was a partner, and liable on that ground. *Vibbard* v. *Roderick*, 51 Barb. 616. But the principle invoked by the plaintiff, we think, is not applicable to this case. There is no proof that the plaintiff ever had any business intercourse or relation with the defendant Fleetham, or that he ever in any way led him to believe that he was a partner, except he inferred that fact from the execution to him of the bill of sale, as communicated to plaintiff by the mercantile agency.

As we have seen, the purchase of one-half interest in the stock did not make Fleetham a partner in fact, and the plaintiff had no warrant from that fact for coming to the conclusion that a partnership in fact existed, as Fleetham did not by that act hold himself out to the world or the plaintiff as a partner of Hutchins. To establish a liability against Fleetham as a partner for the acts of Hutchins, it must be made to appear that a copartnership was formed by express agreement, or that there was an authorization in advance, and consent to be bound by such act as a partner; or a ratification of the act after performance, with the full knowledge of all circumstances; or some act by which an equitable estoppel has been created. *Bank* v. *Walker*, 66 N. Y. 424. None of these conditions exist in this case, unless the acceptance and making of the bill of sale constituted an equitable estoppel. "To give rise to an equitable estoppel there must be a willful representation by one party, made with an intent that it should be acted upon by the other." Herm. Estop. § 327, p. 340. True, "it is not necessary to an equitable estoppel that a party should intend willfully to mislead; but, whatever may be the intent, if he make such a representation as a sensible man would take to be true, and believe that it was meant that he should act upon it, and he does so act, the party making the representation is precluded from testing its truth." *Continental Nat. Bank* v. *National Bank of Commonwealth*, 50 N. Y. 575. Tested by these rules, it cannot be said that the defendant Fleetham is estopped in this case from denying his liability to the plaintiff for credit given by him to Hutchins. The credit was given to Hutchins on plaintiff's accounts. Fleetham made no representation to them before the credit was given. He made no representation to the mercantile agency, on whose report plaintiff claims to have acted, that he was a partner of Hutchins, and as to plaintiff he is not estopped from denying the existence of a partnership. We see no error in excluding the evidence offered by plaintiff that Fleetham obtained a note of Mrs. Hutchins, and that she did not know that she had signed it, or that the bill of sale was filed. It is difficult to see how such evidence, if received, was pertinent or material to the issue.

The remaining question is, did the court err in refusing to submit the questions to the jury as requested by plaintiff? We think not. These requests were made after the court had denied plaintiff's request that the court direct a verdict for the plaintiff, and after the court had directed a verdict for the defendants. The action was not tried by the plaintiff upon the theory that the defendant Fleetham had assumed and agreed to pay one-half of plaintiff's accounts against Hutchins existing at the time of the execution of the first "bill of sale" or chattel mortgage, but upon the ground that the defendant Fleetham was liable as partner, and the court was not asked to submit that question. Nor do we think the plaintiff was in a situation in this action, under the issue as it stood, to insist that the recital in that bill of sale, that the consideration was paid "by the assuming and payment of my one-half indebtedness for drugs, goods, and all property connected with the drug business," would inure to the benefit of the plaintiff, so that in this action they could recover of Fleetham one-half of their claim, or any other amount. It was

not an agreement to·answer for the debt of the defendant Hutchins, which could make Fleetham liable to be prosecuted in an action at law by any one who might have a debt for that class of goods against Hutchins. On the whole case we think it was properly disposed of by the learned trial judge, and the judgment should be affirmed. Judgment affirmed, with costs.