HARRIS *v.* UMSTED.

Opinion delivered July 2, 1906.

1. PARTNERSHIP AND TENANCY IN COMMON DISTINGUISHED.—By an agreement to buy a chattel jointly, without anything said as to a joint sale of the property and division of the profits, a tenancy in common is created, and not a partnership. (Page 501.)

2. TENANCY IN COMMON—EFFECT OF SALE.—Where two persons owned a chattel jointly, and one of them sold it and received the proceeds, the other can ratify the sale and recover his share of the proceeds. (Page 502.)

3. EQUITY JURISDICTION—WAIVER OF OBJECTION.—The right of a defendant to object to the jurisdiction of equity is waived by a failure to move to transfer to the law court. (Page 502.)

4. TENANCY IN COMMON—CONSTRUCTION OF AGREEMENT.—Where two pearl buyers agreed to go together to a distant village and purchase a certain pearl in common, and accordingly went there, but failed to buy the pearl, and one of them, without the other's knowledge, went back the next day and bought the pearl, and the other, after learning of the purchase, waited more than a year, and until the pearl had been resold for a large advance, before claiming an interest in its proceeds, a finding of the chancellor that the agreement did not extent beyond the day on which it was made will be sustained. (Page 502.)

Appeal from Jackson Chancery Court; *George H. Humphries,* Chancellor; affirmed.

*Jno. W. & Jos. M. Stayton* and *Charles T. Coleman,* for appellant.

1. The evidence in this case establishes a partnership agreement. 22 Am. & Eng. Enc. Law (2 Ed.), 13; *Ib.* 41; 37 Ark. 308; 131 Fed. 124; 130 Fed. 475. Having agreed to engage in the joint venture, each owed the utmost good faith to the other, and neither could surreptitiously circumvent the other. If he should, the law would hold him to account for the profits, if any, and withhold from him the right to demand contribution for losses. 22 Am. & Eng. Enc. Law (2 Ed.), 115; 53 Ark. 152.

2. The conceded facts establish a resulting trust in favor of appellant. Wherever one person is placed in such relation to another, by the act or consent of that other, or of the act of a third person, or of the law, that he becomes interested for him or with him in any subject of property or business, he

is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated. 49 Ark. 245; 121 Fed. 620, and authorities cited.

*Stuckey & Stuckey* and *J. M. Bell,* for appellee.

1. Appellant's own evidence does not establish a partnership, which is a thing created by contract, never by operation of law, and must have a valid consideration to support it. George on Part. § § 2, 5. No money was paid, no capital nor labor employed, nor skill displayed to further a common cause. *Ib.* § 19; *Ib.* § 9. If a purchase had been made pursuant to an agreement as stated by appellant, that would have made them tenants in common, not partners. 22 Ark. 381.

2. A contract must necessarily exist before a resulting trust can be established. 9 Ark. 518. The evidence shows that the avoidance of competition was the sole purpose of the agreement, and that the contract that they were not to bid against each other, was for that day only. The negotiations were preliminary, and should not be confused with the contract itself. 7 Am. & Eng. Enc. Law (2 Ed.), 39. Such a contract was illegal and void. Kirby's Digest, § 1976. And the courts will not lend their aid to enforce it. 25 Ark. 210; 30 Ark. 431; 32 Ark. 620; 48 Ark. 489; 92 S. W. 865.

RIDDICK, J. This is a suit in equity brought by Walter Harris against Thos. P. Umsted to recover one-half of the profits arising from the purchase and sale of a pearl. Harris and Umsted both lived in Newport, Arkansas. Harris was a pearl buyer, engaged in the business of buying and selling pearls. Umsted was a member of the firm of T. P. Umsted & Co., composed of himself and his brother, G. B. Umsted, which firm was engaged in the same business. During the morning of June 6, 1902, Harris and T. P. Umsted each received at Newport information by telephone that one DeVault, of Bradford, had found near there in White River a valuable pearl which he desired to sell. Each of these parties learned also that the other had received this information, and was desiring to buy this pearl. Bradford, where the owner of the pearl lived, was about twenty miles from Newport, and, as the morning train going south from Newport had passed before they received the information

about the pearl, they were compelled, in order to reach Bradford·
that day, to go by horse and buggy. To avoid a race between
them from Newport to Bradford and subsequent competition in
buying the pearl, they agreed to go together in a buggy to Brad-
ford, and to purchase the pearl, together, or jointly, if it could be
obtained at a fair price. They went to Bradford, but failed to
obtain the pearl. The owner at first demanded over $2,000 for
the pearl, but finally offered to take as low as $1,350, while Har-
ris and Umsted offered $1,300 for it. That was the highest price
offered, and they returned to Newport without having purchased
the pearl. Next day Umsted returned to Bradford·on the train,
and purchased the pearl, paying therefor $1,410. On the day
following this purchase Harris was informed of the purchase
by Umsted, and he asked Umsted if he, Harris, was not inter-
ested in the purchase. Umsted replied that he did not under-
stand it that way, that he had purchased the pearl for the firm of
T. P. Umsted & Co. It was over a year afterwards before Har-
ris mentioned the subject to Umsted again. He then tendered
Umsted one-half of the money he had paid for the pearl, and no-
tified him that he claimed a one-half interest in the proceeds of
the sale of the pearl. In the meantime Umsted & Co. had sold
the pearl in New York city for $6,700, and the fact that the pearl
had been sold for a large sum had become generally known in
Newport, and Harris knew it at the time he made the tender.

The chancellor found that·there was not sufficient evidence
to sustain the allegations of the complaint, and dismissed the
complaint for want of equity. The appeal of plaintiff brings the
case before us for review.

If we take the evidence of the plaintiff himself as true, it
is doubtful if it is sufficient to support the allegation in his com-
plaint that he and the defendant "formed a copartnership be-
tween them for the purpose of buying and selling a valuable
pearl." It is true that he testified that they agreed to go down to
Bradford and "buy it together." And, in response to the question
of his own counsel as to whether they agreed to buy the "pearl
in partnership," he responded "Yes." But his testimony shows
only an agreement to go to Bradford and buy the pearl together;
in other words, to become joint purchasers of the pearl. But
an agreement by two or more persons to buy a piece of property

together does not amount to an agreement to form a partnership when there is no agreement for a joint sale of the property and a sharing of the profits. Nothing was said by these parties about selling the pearl and sharing the profits, and, if the testimony of this witness be taken as literally true, and they had purchased the pearl under that agreement, they would have owned the pearl in common, but not as partners. *Baldwin* v. *Burrows,* 47 N. Y. 199; *Stevens* v. *McKibben,* 15 C. C. A. (U. S.), 498.

But the question of partnership is not very material in this case, for, if these parties were owners of this pearl in common, and one of them sold it and received the proceeds thereof, the other can ratify the sale and recover his share of the proceeds.

While the action was brought in a court of equity, no motion to transfer the case to the law court was made, and the right to object to the jurisdiction of the court of equity to hear the case was thus waived. *Cribbs* v. *Walker,* 74 Ark. 104-122.

The main question in the case is whether the agreement which these parties made to purchase the pearl together or in common extended beyond the time of the trip to Bradford, on which occasion it was made. After considering the matter, a majority of us are of the opinion that the evidence supports the finding of the chancellor that this agreement did not extend beyond that day. These parties made the agreement on that occasion to prevent competition between them, and to enable them to buy the pearl at a lower price, as they were the only two buyers going to Bradford that day. But there were other pearl buyers at Newport and Memphis who had been informed that the pearl was for sale, and there was no special reason why these parties should prolong their agreement to buy together beyond this trip, for such an agreement would not keep the other parties from bidding.

The testimony of Harris, it is true, tends to support the allegations of his complaint that he and Umsted agreed to purchase the pearl together, and that the agreement was not limited to the particular occasion on which they went to Bradford for that purpose. But this testimony is contradicted by that of Umsted, who states positively that the only agreement made was that they would not bid against each other on that occasion, and that, if either bought the pearl on that trip, it should be for the

benefit of both. As the pearl was not bought at that time, the agreement to purchase together, according to the testimony of Umsted, came to an end. The long delay of Harris in making a definite claim to an interest in the pearl is also a circumstance to be considered. Although he knew within 24 hours after the purchase of the pearl by Umsted that Umsted denied his right to an interest therein, he made no definite claim to an interest, nor offered to pay any part of the price, until over a year afterwards, when it was known that the pearl had been sold for a large price. This conduct is a circumstance against his present claim.

The case, as we see it, turns on a question of fact where the evidence is conflicting; but, taken as a whole, it seems to favor the finding of the chancellor. The judgment is therefore affirmed.

HILL, C. J., (concurring). Taken as a whole, the evidence convinces me that a partnership in handling the pearl was contemplated by both Harris and Umsted, and that Umsted's conduct and statement led Harris into delaying the purchase, believing Umsted would not be his competitor, and that they would profit by waiting, instead of purchasing, when only the sum of $50 split the trade, and that Umsted took advantage of thus leading Harris away from a joint purchase and acquired the pearl himself. There was no partnership between them, for nothing was done under the agreement therefor, but there was a right to a partnership in the venture; but to acquire that right Harris must offer to share, not only the initial cost of the venture, but the effort and money to make it a success, and also to share the possible losses. According to his own statement, he did nothing beyond a bare assertion of his right until fifteen months after the purchase, and twelve months after the sale, when he tendered one-half of the initial cost. This is insufficient to let him in on the profits.

Umsted was much in the case of the "merchantman seeking goodly pearls, who, when he found one pearl of great price, went and sold all that he had and bought it." To make a success in securing a profit on this "pearl of great price," distant markets had to be sought; consequent labor, expenses and intelligent effort were required. Harris offered to share none of these

burdens until long after the enterprise proved a great success, and herein is the essential weakness of his case. As there was no partnership in fact, but a right to one, according to his testimony, Harris should not only have promptly asserted his right on learning that Umsted had acquired the pearl, but should have followed that assertion by *bona fide* offers to do his share of the work and to bear his share of the expenses and losses, and then enforced his rights by suit within a reasonable time, if his rights were denied after he offered to share the burdens. Right to participate in a venture of this kind can not be preserved by a bare assertion of such right. The party must put himself in position to become poorer as well as richer by the enterprise. He can not rest on bare assertion, and wait till the efforts and money of the other party demonstrated the success or failure of the enterprise, and then enforce his right in the partnership if it has proved a profitable enterprise. Harris never put himself in position to become liable for the losses, should the enterprise prove disastrous, and he can not be permitted to sit by and wait and then compel Umsted to bear all the losses or halve the profits —according to the turn of the speculation.

Mr. Justice WOOD concurs herein.