### FISCHER v. EYRE et al.

(Supreme Court, Appellate Division, Second Department. February 5, 1915.)

1. PARTNERSHIP (§ 217*)—RATIFICATION OF CONTRACT—EVIDENCE.

Ratification by general partners of a contract, made ostensibly for the firm by a special partner, is to be ascertained from the entire transaction, including the statements made by the special partner to the general partner, and it is error to exclude evidence of such statement.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 419–425; Dec. Dig. § 217.*]

2. TRIAL (§ 140*)—QUESTION FOR JURY—CREDIBILITY OF WITNESS.

In an action against general partners in a stockbrokerage firm to recover moneys alleged to have been deposited by plaintiff with the firm to cover the value of stock placed in his hands for sale by a special partner in the firm, but which he had been unable to sell, except in part, where it appeared that the actual essential dealings in the transaction had been between the special partner and the plaintiff's brother, who testified, it was error to direct a verdict; the credibility of such brother's testimony as to the reality of the transaction being for the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 334, 335; Dec. Dig. § 140.*]

Appeal from Trial Term, Kings County.

Action by William H. A. Fischer against Maynard C. Eyre and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Argued before JENKS, P. J., and THOMAS, STAPLETON, RICH, and PUTNAM, JJ.

Eliot Norton, of New York City, for appellants.
Frederick H. Sanborn, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

STAPLETON, J.  The plaintiff obtained a judgment against the defendants in the sum of $35,768.51, entered upon a verdict directed by the court.  The defendants appeal from the judgment and from an order denying a motion to set aside the verdict and for a new trial on the minutes.

The plaintiff is a stockbroker, dealing in unlisted securities.  The defendants are general partners in the firm of Prince & Whitely, engaged in the buying and selling of stocks and bonds on commission. One Alfred J. Campbell was a special partner in the firm.  The plaintiff, his brother George E. Fischer, who was a curb broker, and several of their friends, were large holders of stock in a mining corporation known as the Barnes-King Development Company.  Of that company, Campbell, the defendants' special partner, was president. The plaintiff, his brother, their friends, and Campbell were interested in upholding the market for that company's stock.

By this action the plaintiff sought to hold the defendants liable for failing to return moneys alleged to have been deposited with them pursuant to an agreement between him and the firm of Prince & Whitely, through Campbell, the special partner.  The agreement is thus alleged in the complaint:

"In or about the latter part of April, 1907, plaintiff entered into an agreement with the said firm of Prince & Whitely, whereby it was among other things agreed that the said Prince & Whitely should deliver to plaintiff between 8,000 and 9,000 shares of the capital stock of Barnes-King Development Company, and that the plaintiff should endeavor to sell the same at private sale upon commission as a stockbroker, on behalf of the said firm of Prince & Whitely, at such prices as said firm should designate, and should return to said Prince & Whitely any shares which he should be unable to sell.  And it was further agreed that the said plaintiff should deposit with said firm of Prince & Whitely security for the said stock so to be delivered to him, to wit, money, or other stocks of equal value, which was a usual custom among brokers, which money or stock, so deposited, it was agreed should be repaid, with interest, to plaintiff as the said stock or its proceeds should be returned to said Prince & Whitely."

The plaintiff alleges that in pursuance of the agreement, and from May 3 to May 7, 1907, inclusive, Prince & Whitely delivered to him 8,600 shares of the Barnes-King stock, the par value of which was $5, to be sold, 3,100 shares at 4¼ and 5,500 shares at 4⅜ against which the plaintiff deposited with Prince & Whitely, as security pending sale, sums aggregating $37,237.50.  Of the shares alleged to have been consigned to him, the plaintiff was able to sell but 2,500, for which he received $11,093.75.  He tendered the remaining 6,100 shares, and demanded the difference between his deposit of $37,237.50 and the sum of $11,093.75 that he received for the sale of the 2,500 shares, to wit, $26,143.75.  The plaintiff first made tender to and demand upon Campbell.  After Campbell's death, which occurred during the summer of 1907, the plaintiff made tender to and demand upon the defendants.  The tender was not accepted, and the demand for repayments was refused.

The plaintiff adduced no evidence of any personal transaction with any of the defendants.  His evidence of the contract alleged was the testimony of his brother, between whom and Campbell the essential

dealings were had. That evidence tended to prove that the brother, as plaintiff's agent, made the contract with the plaintiffs through Campbell, who, as has been stated, occupied the dual role of president of the Barnes-King Development Company and special partner in defendants' firm. There was no proof that Campbell was actually authorized by the defendants to make the contract for them. There was no conclusive proof that the defendants ratified their special partner's act. The plaintiff sought to spell ratification out of the delivery of the stock by the defendants and the receipt by them of the moneys deposited as security. But the defendants proffered evidence tending to prove that the stock came from Campbell and others, that their firm was simply the channel through which the stock passed from Campbell and others into the hands of Fischer, that the transaction was between Campbell and Fischer personally, and that the acts of the defendants were performed, not as principals, but merely in the capacity of stockbrokers. This evidence was excluded.

[1] Defendants also proffered evidence tending to show what the special partner told the general partners he had agreed upon with the plaintiff or his agent. This evidence was erroneously excluded. Where there is no proof of any agreement with any general partner, ratification by the general partners of a contract made by a special partner is to be ascertained from the entire transaction, including the statements which the special partner made to the general partners. See Meserole v. Archer, 3 Bosw. 376.

[2] We are of opinion that it was error to direct a verdict. The credibility of the witness, plaintiff's brother, is a proper subject for the jury's consideration. Kavanagh v. Wilson, 70 N. Y. 177. It is the province of the jury to determine whether or not the transaction between plaintiff's brother and the special partner, as testified to by the brother, was actual. If found to be an actual transaction, it is for the jury to say whether or not the defendants ratified it. Chapter 420, Laws of 1897 (chapter 51 of the General Laws [the Partnership Law in force at the time]); Baldwin et al. v. Burrows et al., 47 N. Y. 199; Ritch v. Smith, 82 N. Y. 627.

The judgment and order must be reversed, and a new trial granted; costs to abide the event. All concur.