ELTON CLARK and Others, as Trustees under a Declaration of Trust under the Name of BOSTON MEXICAN PETROLEUM TRUSTEES, a Copy of Which Is on File with the Commissioner of Corporations of the State of Massachusetts, Plaintiffs, *v.* JOHN H. KIRBY and Others, as Trustee for Himself and Others, Defendants.

Supreme Court, New York County, December 5, 1928.

Root, Clark, Buckner, Howland & Ballantine [*Edward F. McClennen*, of counsel], for the plaintiffs.

*Ernest G. Budington*, for the defendants Kirby and McElhiney.

*Wing & Wing* [*Arthur K. Wing*, of counsel], for the defendant Van Laningham.

CHURCHILL, J. The action is to rescind an assignment in writing, made by defendant Kirby, individually and as trustee, whereby he assigned to plaintiffs a certain lease of oil lands, and also to rescind an agreement in writing, executed contemporaneously with the assignment, between the plaintiffs and the defendants, whereby the plaintiffs undertook to hold the lease in trust for defendants except as to eighty per cent of an undivided three-eighths interest therein. The last mentioned interest had been purchased by plaintiffs for themselves and was to be held by them for their own account. For that interest they paid Kirby $116,928.13. They seek to rescind the entire transaction on the ground that their purchase was induced by false representations as to material facts. It is alleged that these representations were made by the defendants individually and through their agents duly authorized in that behalf.

The complaint sets out numerous representations which are alleged to have been made and relied on and which, it is claimed, proved to have been untrue. But it is nowhere alleged that any of these representations were made with knowledge of their falsity or with fraudulent intent.

Whatever representations were made to plaintiffs for which the defendants, or any of them, might conceivably be thought responsible, were made by the defendant McElhiney. He acted for all concerned in conducting the negotiations with plaintiffs. They knew that he was so acting and that he was endeavoring to

effect a sale of the lease. No doubt he had implied authority to describe the property and to make such general representations with respect to it as would be naturally expected in such a case. This he did in his letter to Swift & Co., of October 5, 1920, the contents of which he later substantially repeated and confirmed in conversations with plaintiffs' representative, Crane. But in that letter McElhiney expressly disclaimed responsibility for information given with respect to costs and production of oil. This was stated to have been given according to the best information and belief of the writer but not to be guaranteed by him. Obviously, in the absence of fraud, statements made with this qualification could not form the basis of any sort of liability, even though erroneous. Apart from the statements so qualified I cannot find that any substantial misrepresentations of matters of fact were made in the letter.

Nor do I think that any of the material misrepresentations of fact alleged in the complaint are shown to have been made orally except with respect to the cost of the property to the defendants. The complaint alleges that the representation was that the lease had " cost " the defendants $310,000. It seemed to me that this allegation went beyond any mere question of agreed price and I, therefore, admitted evidence to the effect that McElhiney represented that the purchase price of the lease had been $300,000 and that this sum, with accrued interest, had been fully paid in cash and notes. This representation was untrue in so far as it stated that the purchase price had been fully paid. Seventy-five thousand dollars of that price had not been paid at all, even up to the time of the trial, and part of the remaining $225,000 had been paid by the transfer of certain mining stock at a valuation of $75,000, a sum probably very much in excess of its real value. It is doubtful whether the defendants were even under obligation to pay the balance of $75,000 at the time of the sale to plaintiffs. Two of them seem to have had a mere option on a three-eighths interest at that price.

Of course, the agent who effected the sale could have had no implied authority to make representations to the purchaser as to what the property had cost his principals, and there is no evidence that he had express authority to do so or that he had been invested with any appearance of such authority. Nor were the representations ratified by the receipt of the purchase money unless the money was received with knowledge of the representations. (*Smith* v. *Tracy*, 36 N. Y. 79.) Such knowledge is not shown. It follows that if this were an action at law for damages it would necessarily fail. Fraud on the part of the agent is a prerequisite to liability on the part of an innocent principal upon representations which he

has neither authorized nor ratified. (*Smith* v. *Tracy, supra; Baldwin* v. *Burrows,* 47 N. Y. 199; *Krumm* v. *Beach,* 96 id. 398.) And no fraud is here alleged.

But the case is quite different where the plaintiff seeks, not to enforce liability upon a supposed contract which the agent was without authority to make, but to rescind the contract which the plaintiff made in reliance upon the representations. Where that is the purpose of the action it is immaterial that the agent acted without authority and also without fraud. (*Bloomquist* v. *Farson,* 222 N. Y. 375.) It is enough that the misrepresentations were of material matters of fact, that they were relied upon by plaintiff and that he promptly demands rescission and offers to restore the *status quo.*

It cannot now be doubted that a substantial misrepresentation by a vendor of the price paid by him for the property is a material representation. (*Sandford* v. *Handy,* 23 Wend. 260; *Van Epps* v. *Harrison,* 5 Hill, 63; *Smith* v. *Countryman,* 30 N. Y. 655, 681; *Fairchild* v. *McMahon,* 139 id. 290; *Nanes* v. *Peck & Mack Co.,* 181 App. Div. 760.)

Here the misrepresentation did not go to the amount of the purchase price. The falsity of the representation lay in the fact that the agreed price was said to have been fully paid in cash and notes, whereas it had not been fully paid in any way and such payment as had been made had been in large part in mining stock of doubtful value. It seems to me impossible to say that a misrepresentation of this kind was any less material than a misstatement of the amount of the purchase price would have been, especially where the character of the property was such that its value was, at best, a highly speculative question. If it is necessary to give affirmative evidence of reliance upon the representation the testimony of the witness Crane here supplies it.

Since the representation could not form the basis of an action at law for damages it follows that rescission must be decreed unless the plaintiffs are to be left without remedy.

In passing upon the 400 requests for findings of fact I have refused all those which do not appear to be within the issues raised by the pleadings. I have also refused many requests for findings of merely evidentiary facts and many others which are not findings of fact but mere negations.

The decision may include a finding that McElhiney wrote the letter of October 5, 1920, and delivered it to Swift & Co., and the finding should set forth the letter at length. A further finding may be included to the effect that this letter was thereafter delivered to plaintiffs by Swift & Co., and was discussed between Crane and

McElhiney and that its contents were substantially reiterated orally by McElhiney to Crane.

I conclude that there should be judgment for the plaintiffs, with costs.

Settle decision and judgment on notice. Let the decision contain conclusions of law specifying the precise relief to which plaintiffs are entitled and which is to be incorporated in the judgment.